**UNITED STATES of America,
Plaintiff,**

v.

**Cody D. GLOVER, Defendant.**

**No. Civ.A. 98–1005901–JWL.**

United States District Court,
D. Kansas.

March 4, 1999.

Steven K. Gradert, Timothy J. Henry, Office of Federal Public Defender, Wichita, KS, Charles D. Dedmon, Melody J. Evans, Office of Federal Public Defender, Topeka, KS, Robert Nigh, Tulsa, OK, for Cody D. Glover, defendant.

Thomas J. Weilert, Reals & Weber, Wichita, KS, for Mark L. Holley, defendant.

David M. Lind, Office of U.S. Atty., Wichita, KS, for U.S.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is before the court on the following motions of defendant Cody D. Glover:

Motion to Strike Specific "Aggravators" in the Government's Notice of Intent to Seek the Death Penalty (Doc. # 202);

Motion to Strike the Government's Notice of Intent to Seek the Death Penalty (Doc. # 201);

Motion to Strike the Constitutionally Deficient Notice of Intent to Seek the Death Penalty (Doc. # 215);

Motion for Bill of Particulars (Doc. # 216);

Motion to Bar the Death Penalty as Racially Discriminatory (Doc. # 218); and

Motion for Second Stage Procedures (Doc. # 236).

The government has filed its responses, and Mr. Glover has filed his replies. On February 8, 1999, the court heard oral argument on the motions, and took the motions under advisement. The court is now prepared to rule.

I. *Motion to Strike Specific "Aggravators" in the Government's Notice of Intent to Seek the Death Penalty (Doc. # 202)*

On November 2, 1998, the government filed a notice of intention to seek the death penalty as to the defendant Cody Glover, thereby invoking the provisions of the Federal Death Penalty Act, 18 U.S.C. §§ 3591–3596. The Federal Death Penalty Act requires the government to file a notice "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. § 3593(a)(2). The government's Notice of Intent to Seek the Death Penalty (Doc. # 177) alleges the following aggravating factors:

**STATUTORY AGGRAVATING FACTORS**

1. The defendant intentionally attempted to kill more than one person, John Brewer and Christy Lewis, in a single criminal episode. 18 U.S.C. § 3592(c)(16);

2. The defendant, in the commission of the murder, knowingly created a grave risk of death to Christy Lewis in addition to the victim of the offense, John Brewer. 18 U.S.C. § 3592(c)(5);

3. The defendant committed an offense in expectation of the receipt of something of pecuniary value. 18 U.S.C. § 3592(c)(8).

## NONSTATUTORY AGGRAVATING FACTORS

1. The defendant intentionally engaged in conduct, intending that John Brewer be killed and/or that lethal force be employed against John Brewer, which resulted in the death of John Brewer;

2. The defendant committed the murder for the purpose of avoiding or preventing a lawful arrest or prosecution for the robbery of the Kum & Go;

3. The defendant intentionally engaged in conduct which resulted in the death of John Brewer and serious physical and emotional injury to Christy Lewis;

4. In committing the murder, the defendant caused permanent harm to the family of John Brewer;

5. The defendant committed the murder of John Brewer after substantial premeditation to rob the Kum & Go;

6. The defendant lacks remorse for the murder of John Brewer; and/or

7. The defendant represents a continuing danger to the safety of others.

Mr. Glover seeks to strike statutory aggravators # 2 and 3, and all non-statutory aggravators except # 2. The court will address each of these factors in turn.

A. Statutory Factors.

1. *The defendant, in the commission of the murder, knowingly created a grave risk of death to Christy Lewis in addition to the victim of the offense, John Brewer. 18 U.S.C. § 3592(c)(5).*

 Mr. Glover contends that the government's second enumerated statutory aggravating factor, that "the defendant knowingly created a grave risk of death to more than one person," is duplicative and cumulative to the government's first enumerated statutory aggravating factor, that "the defendant attempted to kill more than one person." Mr. Glover asserts that submitting both statutory factors to the jury "is precisely the type of duplicative and cumulative statement that was held unconstitutional in *United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996), *cert. denied,* 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997)." The court agrees.

In *McCullah,* the district court submitted both the Section 848(n)(1)(C) and (n)(1)(D) statutory aggravating factors to the jury. In holding such submission improperly duplicative, the Tenth Circuit reasoned:

The (n)(1)(D) factor requires that the defendant intentionally engages in conduct which he knows creates a grave risk of death and that such death results. 21 U.S.C. § 848(n)(1)(D). This substantially overlaps with the (n)(1)(C) factor which refers to intentional conduct intending that the victim be killed. *See* 21 U.S.C. § 848(n)(1)(C). *Any intentional conduct aimed at producing death is by definition conduct done with knowledge of grave risk of death. While the factors are not identical per se, the (n)(1)(C) factor necessarily subsumes the (n)(1)(D) factor.*

Such double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally. [W]hen the same aggravating factor is counted twice, the "defendant is essentially condemned 'twice for the same culpable act,'" which is inherently unfair. While the federal statute at issue is a weighing statute which allows the jury to accord as much or as little weight to any particular aggravating factor, the mere finding of an aggravating factor cannot but imply a qualitative value to that factor. When a sentencing body is asked to weigh a factor twice in its decision, a reviewing court cannot

"assume it would have made no difference if the thumb had been removed from death's side of the scale." ... *We hold that the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process which necessitates a reweighing of the aggravating and mitigating factors.*

*Id.* at 1111–12 (citations omitted, emphasis added). The court finds such reasoning applicable and persuasive in this case.

■ The government concedes that "overlapping mental states cannot be found by the jury as separate aggravating factors." Government's Brief (Doc. # 294) at 4. The government, however, maintains that it is premature for the court to consider this issue at this time, and suggests that: (1) the court instruct the jury that it may only find one of the two statutory factors, but not both; or (2) the government be permitted to elect, at the close of evidence during the penalty phase, one of the two factors for the jury to consider.

The court finds that one of the two duplicative aggravating factors must be stricken sufficiently in advance of trial to allow Mr. Glover reasonable notice. The government is given until March 12, 1999, to elect between the first two enumerated statutory aggravating factors. Additionally, if the government elects the second of the two aggravating factors, the court finds that Mr. Glover is entitled to greater factual specificity on the government's allegations. Accordingly, if the government elects the second factor, the court, in the exercise of its inherent authority, *see United States v. Kaczynski,* 1997 WL 716487 (E.D.Cal.1997); *United States v. McVeigh,* 944 F.Supp. 1478, 1486–87 (D.Colo.1996), directs the government to amend its death penalty notice (Doc. # 177) to specifically articulate its factual allegations by setting out what act or acts the government contends constitute the knowing creation of a grave risk of death, by March 12, 1999.

2. *The defendant committed an offense in expectation of the receipt of something of pecuniary value. 18 U.S.C. § 3592(c)(8).*

■ Mr. Glover argues that the government's third statutory aggravator must be stricken because the government has failed to demonstrate, in its pleadings or in discovery, that the *homicide* was committed for pecuniary gain. Mr. Glover contends 18 U.S.C. § 3592(c)(8) contemplates homicide as "the offense" that must be committed "in the expectation of the receipt of anything of pecuniary value."

The court observes that because the government has failed to identify "the offense" in the Death Penalty Notice (Doc. # 177), Mr. Glover is left to speculate as to what "offense" the government is alleging, *i.e.,* the homicide itself, or the robbery. In addition, the notice provides no specific facts regarding the "something of pecuniary value," or any facts supporting the allegation that Mr. Glover had an "expectation of the receipt" of something of pecuniary value.

During oral argument on this motion, the government clarified that the offense to which the aggravator refers is the capital homicide.[1] The court finds that Mr. Glover is entitled to greater factual specificity on the government's allegations with respect to this statutory aggravator. Accordingly, the court, in the exercise of its inherent authority, directs the government to more specifically articulate the nature of this aggravator by March 12, 1999.

1. Thus, the government's representation at the hearing appears to moot Mr. Glover's second argument on this issue. As his second argument, Mr. Glover asserts: "If it is the government's argument that the robbery alleged in Count I of the indictment was committed for purposes of pecuniary gain, this aggravator simply duplicates the capital offense [charged in the case, *i.e.,* that Mr. Glo-ver caused the death of the victim by use of a firearm during the course of a robbery.]" Mr. Glover maintains that if the robbery is construed as "the offense" under § 3592(c)(8), "the pecuniary gain aggravating factor would exist in the case of *every* felony murder involving robbery, because pecuniary gain is a motive for every such robbery." Mr. Glover's Brief (Doc. # 202) at 9–10.

### B. Non-statutory factors.

1. *The defendant intentionally engaged in conduct, intending that John Brewer be killed and/or that lethal force be employed against John Brewer, which resulted in the death of John Brewer.*

██ With respect to the government's first non-statutory aggravator, Mr. Glover argues that it should be stricken as duplicative. He contends that this non-statutory aggravator "is simply the government's third restatement of statutory aggravating factors one and two." Mr. Glover's Brief (Doc. # 202) at 12. The government responds that "any perceived overlapping may be cured by an instruction to the jury." Government's Brief (Doc. # 294) at 9.

The government's first statutory aggravator alleges that Mr. Glover "intentionally attempted to kill" John Brewer; the second statutory aggravator alleges that Mr. Glover "knowingly created a grave risk of death" to John Brewer; and the first non-statutory aggravator alleges that Mr. Glover "intentionally engaged in conduct, intending that John Brewer be killed." The court finds that all three aggravators allege the same mental state. Once again, the government concedes that "overlapping mental states cannot be found by the jury as separate aggravating factors." Government's Brief (Doc. # 294) at 4. The court concludes that the language of the government's first non-statutory aggravator is impermissibly duplicative of the government's first two statutory aggravators. *See, McCullah,* 76 F.3d at 1111–12. Thus, the government's first non-statutory factor must be stricken.

3. *The defendant intentionally engaged in conduct which resulted in the death of John Brewer and serious physical and emotional injury to Christy Lewis.*

As to the government's third non-statutory aggravating factor, Mr. Glover first claims that the language "the defendant intentionally engaged in conduct which re-sulted in the death of John Brewer" is duplicative, as it restates the allegation that Mr. Glover "intended to kill John Brewer." The government submits that the phrase "in the death of John Brewer" may be stricken. Accordingly, the court will strike the phrase "in the death of John Brewer" from this aggravating factor.

██ Next, Mr. Glover challenges that portion of the aggravator alleging Mr. Glover caused "serious physical and emotional injury to Christy Lewis" as duplicative of the government's first two statutory aggravators. Mr. Glover submits that evidence concerning Christy Lewis' injuries may be relevant in support of the first statutory aggravating factor, but claims that alleging this factor as a separate aggravator is unconstitutionally duplicative. Mr. Glover cites absolutely no authority and engages in very little analysis of this issue. The court is not persuaded on this showing that the portion of this aggravator alleging "serious physical and emotional injury to Christy Lewis" is duplicative of the first two statutory aggravators. Specifically, the court is unpersuaded that the aggravators alleging Mr. Glover "intentionally attempted to kill" Christy Lewis and "knowingly created a grave risk of death" to Christy Lewis substantially overlap with the aggravator alleging Mr. Glover caused "serious physical and emotional harm" to Christy Lewis. Moreover, as the court held *supra,* the government must strike one of the first two statutory aggravators.

██ Mr. Glover next challenges the phrase "serious physical and emotional injury" as unconstitutionally vague. The Supreme Court has announced that a vagueness review should be "quite deferential" because "mathematical precision" is not possible in the definition of aggravating factors. *Tuilaepa v. California,* 512 U.S. 967, 973, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (citing *Gregg v. Georgia,* 428 U.S. 153, 193–194, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (factors "are by necessity somewhat general")). A factor is not unconstitutional

if it has some "common-sense core of meaning ... that criminal juries should be capable of understanding," *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment). Nevertheless, an aggravating factor may be unconstitutionally vague if it "leave[s] the sentencer without sufficient guidance for determining the presence or absence of the factor." *Espinosa v. Florida,* 505 U.S. 1079, 1081, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992).

The Supreme Court has found "only a few" factors vague. *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (citing *Maynard v. Cartwright,* 486 U.S. 356, 363–364, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (question whether murder was "especially heinous, atrocious, or cruel"); *Godfrey v. Georgia,* 446 U.S. 420, 427–429, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (question whether murder was "outrageously or wantonly vile, horrible and inhuman")). The Supreme Court has upheld a number of factors against vagueness challenges. *See, e.g., Arave v. Creech,* 507 U.S. 463, 472–473, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993) (question whether the defendant was a "cold-blooded, pitiless slayer" not unconstitutionally vague); *Walton v. Arizona,* 497 U.S. 639, 654, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (question whether "perpetrator inflict[ed] mental anguish or physical abuse before the victim's death" with "[m]ental anguish includ[ing] a victim's uncertainty as to his ultimate fate" not unconstitutionally vague) (internal quotation marks omitted); *Proffitt v. Florida,* 428 U.S. 242, 255–258, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.) (various "mitigating" questions not unconstitutionally vague, nor is the question whether the crime was a "conscienceless or pitiless

crime which [wa]s unnecessarily torturous to the victim") (internal quotation marks omitted); *Jurek v. Texas,* 428 U.S. 262, 274–276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (question "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" not unconstitutionally vague).

Neither party has directed the court to any authority where the specific language in the aggravator at issue was either upheld or struck down as unconstitutionally vague. The government notes that one of the non-statutory aggravators in *United States v. McVeigh* alleged "that the defendant caused serious physical and emotional injury." In *McVeigh,* however, it does not appear that the defendant challenged that specific factor on grounds of vagueness.

The court finds that the defendant is entitled to greater specificity as to the "serious physical and emotional injury" the government claims the defendant caused Christy Lewis. For example, the defendant should be entitled to know whether the government is claiming that Lewis suffered the normal trauma likely attendant to this type of incident, or instead is claiming that she suffered in some extraordinary manner, *i.e.,* post traumatic stress disorder. The court, in the exercise of its inherent authority, directs the government to more specifically articulate the nature of this aggravator by March 12, 1999.[2]

4. *In committing the murder, the defendant caused permanent harm to the family of John Brewer.*

▮ Next, Mr. Glover argues that the government's fourth aggravating factor should be stricken because it "does nothing to guide the juror's discretion or distin-

2. In *McVeigh,* the court held that the detailed factual allegations in the indictment, when read in conjunction with the aggravating factor, were sufficient to uphold that factor against a vagueness challenge. *See also Kaczynski,* 1997 WL 716487, *19, 21 (indictment can provide the requisite specificity to an otherwise insufficient notice). Here, the

court is unable to look to the indictment to provide the needed factual amplification as to any of the aggravators, because the government's superceding indictment contains no detailed factual allegations. *See* Superceding Indictment filed December 1, 1998 (Doc. # 203).

guish this murder from any other murder." Mr. Glover's Reply Brief (Doc. # 299) at 6. The Federal Death Penalty Act expressly allows for victim impact evidence, *see* 18 U.S.C. § 3593(a).[3] The court finds that the defendant is entitled to greater specificity regarding this factor, to wit, which members of the family have suffered, the nature of their suffering, and the nature of the "permanent harm." For example, whether members of the family sought counseling or other medical treatment, such as hospitalization, and whether and to what extent members of the family suffered financial harm, are relevant considerations in discerning whether this factor is indeed "aggravating" in this case. The court, in the exercise of its inherent authority, directs the government to more specifically articulate the nature of this aggravator by March 12, 1999.

5. *The defendant committed the murder of John Brewer after substantial premeditation to rob the Kum & Go.*

Mr. Glover asserts that the word "premeditation" does not "guide the sentencer's discretion," *citing Stringer v. Black,* 503 U.S. 222, 234, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). Mr. Glover then argues that because the word "premeditation" by itself does not guide the sentencer's discretion, this aggravating factor

must be stricken unless the word "substantial" performs the guiding function. He contends that it does not, and claims that the word "substantial" is unconstitutionally vague.

The court in *McVeigh* rejected a vagueness challenge to the word "substantial" used in the context of the statutory aggravator "the defendant committed the offense after substantial planning and premeditation," 18 U.S.C. § 3592(c)(9). There, the court determined that "substantial is one of those everyday words having a common sense core meaning that jurors will be able to understand." *McVeigh,* 944 F.Supp. at 1490. In *McCullah,* the Tenth Circuit likewise held the word "substantial" was not inherently ambiguous and vague in the context of the same statutory aggravator applied in *McVeigh.* The Tenth Circuit determined that the word, when viewed in the context of the jury instructions regarding that aggravator, "clearly has a commonsense meaning ... which criminal juries are capable of understanding." *McCullah,* 76 F.3d at 1110. Here, too, the court finds that precise instructions to the jury should resolve Mr. Glover's vagueness concerns regarding the term "substantial." [4]

Notwithstanding our holding that the word "substantial" is not unconstitu-

---

**3.** *18 U.S.C. § 3593(a)* provides, in pertinent part: "The factors for which notice may be provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information."

**4.** In his supplemental brief (Doc. # 234) and in his reply brief, Mr. Glover cites *United States v. Webster,* 162 F.3d 308 (5th Cir.1998). In *Webster,* the Fifth Circuit held the lower court had improperly charged the jury on the statutory aggravating factor of whether the defendant engaged in "substantial planning and premeditation" of the offense, by allowing the jury to consider premeditation with respect to the kidnaping, and not the murder. Mr. Glover argues this holding supports his

theory that "to allow the government to allege premeditation to commit robbery as a non-statutory aggravator circumvents the choice by Congress." Mr. Glover's Reply Brief (Doc. # 299) at 8. The court is not persuaded. In *Webster,* the Fifth Circuit merely held that the lower court had incorrectly instructed on the *statutory* aggravating factor, because the specific language of the statutory factor § 3592(c)(9) required substantial planning and premeditation *to cause death. Webster* simply cannot be construed as support for Mr. Glover's proposition that alleging the *non-statutory* aggravator—premeditation to commit robbery—"circumvents the choice by Congress." To the contrary, Congress explicitly provided in the statute that, in addition to the statutorily-enumerated aggravating factors, "the jury ... may consider whether any other aggravating factor ... exists." 18 U.S.C. § 3592(c)(15).

tionally vague, the court still finds that Mr. Glover is entitled to greater factual specificity on the government's allegations with respect to this non-statutory aggravator. Accordingly, the court, in the exercise of its inherent authority, directs the government, by March 12, 1999, to more specifically articulate the nature of this aggravator by setting out the factual basis on which it intends to show that the premeditation was substantial.

### 6. The defendant lack remorse for the murder of John Brewer.

██ With respect to the government's non-statutory aggravating factor alleging "lack of remorse," Mr. Glover observes that the government, in its death penalty notice (Doc. # 177), cites no instance in which Mr. Glover *affirmatively* demonstrated any lack of remorse. Mr. Glover concludes the factor "on its face" must be based solely upon Mr. Glover's failure to admit that he committed the offenses charged, and upon Mr. Glover's silence regarding the government's accusations. Mr. Glover contends, under such circumstances, the "lack of remorse" aggravating factor violates his Fifth Amendment right to remain silent, and his Sixth Amendment right to trial: "To permit 'lack of remorse'—the absence of an admission of guilt and expression of contrition for it—to be a factor weighing in favor of the death penalty directly permits the jury to punish the defendant for exercising his right not to admit guilt and go to trial." Mr. Glover's Brief (Doc. # 202) at 25. Mr. Glover argues that this factor violates the Eighth Amendment because, in a capital prosecution, there is a "heightened need for reliability," and the difficulty in assessing this factor "results in an impermissible degree of unreliability in a death penalty proceeding." *Id.* at 29.

In response, the government states: "Defendant assumes, incorrectly, that this [factor] will be based upon his silence." Government's Brief (Doc. # 294) at 12. The government then claims that so long as it offers affirmative evidence, not defendant's silence, and the evidence is relevant,

reliable, and its probative value is not substantially outweighed by the danger of unfair prejudice, the factor may be submitted to the jury. *Id.* at 12–13. The government cites *Nguyen,* 928 F.Supp. at 1541–42, and *Kaczynski,* 1997 WL 716487 at *21–22, 27–28, in support of its position.

The court observes that Mr. Glover "incorrectly assumed" the government intended to rely on Mr. Glover's silence precisely because he has not been provided with any information as to this factor. In *United States v. Davis,* 912 F.Supp. 938 (E.D.La.1996), the court stated:

> Lack of remorse is a subjective state of mind, difficult to gage objectively since behavior and words don't necessarily correlate with internal feelings. In a criminal context, it is particularly ambiguous since guilty persons have a constitutional right to be silent, to rest on a presumption of innocence and to require the government to prove their guilt beyond a reasonable doubt. To allow the government to highlight an offender's "lack of remorse" undermines those safeguards. Without passing on whether lack of remorse is per se an inappropriate independent factor to consider, the court finds it inappropriate in this case. The only information proposed to sustain the factor is Davis, alleged jubilation in learning that [the victim] had been killed. The government does not propose to introduce evidence of continuing glee, or boastfulness, or other affirmative words or conduct that would indicate a pervading and continuing lack of remorse. Furthermore, as already noted, the allegation of lack of remorse encroaches dangerously on an offender's constitutional right to put the government to its proof.

*Id.* at 946. While the court in *Davis* did not allow "lack of remorse" to be alleged as a separate aggravating factor, it stated that it would allow the government to present evidence of the defendant's alleged exultation as probative of "future dangerousness." *Id.*

Here, the government has provided Mr. Glover with even less information than the government provided to Davis. Without more information, the court is unable to assess whether submission of this factor to the jury would be proper in this case. Consequently, the court, in the exercise of its inherent authority, directs the government, by March 12, 1999, to more specifically articulate the nature of this aggravator by setting out the factual basis on which it intends to show Mr. Glover's lack of remorse. After the government has fully specified the factual basis and the evidence it intends to use to prove this factor, the court will consider whether a pretrial evidentiary hearing is warranted.[5]

### 7. The defendant represents a continuing danger to the safety of others.

■ In objecting to the government's seventh non-statutory aggravating factor, Mr. Glover claims that "because Congress chose not to include such a 'future dangerousness' provision within the enumerated statutory aggravating factors, Congress intended that this general factor not be considered as a separate non-statutory aggravating factor." Mr. Glover's Brief (Doc. # 202) at 30. Mr. Glover points to no legislative history or other authority to support his bare speculation as to Congress' intent. To the contrary, Congress explicitly provided in the statute that, in addition to the statutorily-enumerated aggravating factors, "the jury ... may consider whether *any other* aggravating factor ... exists." 18 U.S.C. § 3592(c)(15).

The "continuing danger" factor has been upheld by the Supreme Court in the face of vagueness challenges to state capital sentencing schemes. *See, e.g., Jurek,* 428 U.S. at 274–76, 96 S.Ct. 2950; *Tuilaepa,* 512 U.S. at 974, 114 S.Ct. 2630, (citing *Jurek* and continuing threat factor with approval); *California v. Ramos,* 463 U.S.

992, 1002–03, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (discussing *Jurek*). Federal district courts also have upheld its use as a non-statutory aggravating factor. *See, e.g., United States v. Davis,* 912 F.Supp. 938, 945 (E.D.La.1996) ("threat of future dangerousness" factor not unconstitutionally vague); *United States v. Bradley,* 880 F.Supp. 271, 287 (M.D.Penn.1994) ("continuing threat to society" factor not void for vagueness).

■ The court finds that evidence of Mr. Glover's "continuing danger to the safety of others,"[6] if properly presented, is admissible. The government, during oral argument on this motion, indicated that it intends to present evidence regarding unadjudicated acts to prove this factor. The death penalty notice (Doc. # 177) reveals nothing about the specific acts on which the government proposes to rely at sentencing. As noted by the court in *Kaczynski*:

> When the government seeks to introduce unadjudicated misconduct evidence during the guilt phase [of a] trial, it must specify what "other acts" it intends to present. The government has not proffered a persuasive justification for deviating from that principle during the sentencing phase of a capital trial. While the death penalty statute may not explicitly require such notice to be given, formulating such a procedure is an appropriate exercise of this court's inherent authority. *See Carlisle v. United States,* 517 U.S. 416, 116 S.Ct. 1460, 1466, 134 L.Ed.2d 613 (1996); *United States v.. Beckford,* 962 F.Supp. 748, 754 (E.D.Va.1997).

*Id.* at *20.

The court finds that Mr. Glover should have notice of the unadjudicated acts, both to avoid surprise and so that any appro-

---

**5.** Mr. Glover, in his reply brief, argues "at a minimum, the Court should assess the validity of the government's proffered evidence to support the factor during an evidentiary hearing conducted prior to trial." Mr. Glover's Reply Brief (Doc. # 299) at 9.

**6.** This court agrees with the court in *Nguyen* that "[p]rison staff and inmates have the same right to be protected from inmate killers as do persons who live and work in free society." *Nguyen,* 928 F.Supp. at 1542 n. 14.

priate motions can be filed. Accordingly, as in *Kaczynski,* the government is directed to amplify its notice by providing a written list identifying the particular unadjudicated acts that it will seek to introduce during sentencing on this factor, as well as the dates of the unadjudicated acts. The government is further directed to list the witnesses and exhibits the government intends to present to prove the unadjudicated acts. The court finds such supplementation should adequately apprise Mr. Glover of the nature of the evidence on which the government will rely. Such amendment to the notice should be filed with the court by March 12, 1999.

## II. *Motion to Strike the Government's Notice of Intent to Seek the Death Penalty (Doc. # 201).*

▆▆ In the government's Notice of Intent to Seek the Death Penalty (Doc. # 177), the government lists three statutory and seven non-statutory aggravating factors. Mr. Glover now advances several arguments challenging the constitutionality of the non-statutory aggravating factors in general. The court will address each of these arguments in turn.

### A. *Arbitrary and Capricious.*

Mr. Glover contends that non-statutory aggravating factors do not limit and guide the discretion of the jury, and thus permit arbitrary and capricious death sentences in violation of the Eighth and Fourteenth Amendments. Mr. Glover claims that 18 U.S.C. § 3592(c) "authoriz[es] the government to unilaterally expand the list of aggravating factors on a case-by-case basis" and "injects into capital proceedings precisely the uncertainty and disparate results that *Furman* [*v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ] found to violate the Eighth Amendment." Mr. Glover's Brief (Doc. # 201) at 4. Mr. Glover asserts:

> The only guidance ... the statute gives is really no guidance at all: that the prosecutor may give notice of, and the jury may consider, 'any *other aggravating* factor.' Beyond the requirements

that a factor be "other" and be "aggravating," the statute provides no guidance to prosecutors in determining how to select or define non-statutory aggravating factors in a particular case.... The statute's standard-less procedure creates an impermissible risk that the death penalty will be imposed arbitrarily and capriciously, in violation of the Eighth Amendment.

*Id.* at 4–5.

This identical argument was raised in *United States v. Kaczynski,* 1997 WL 716487 (E.D.Cal.1997). In rejecting this argument, the court in *Kaczynski* reasoned:

> The prosecutor's discretion is sufficiently guided so as to comply with the Supreme Court's directive that death sentences not be arbitrarily or capriciously imposed.

> First, although § 3592(c) provides that the prosecutor may allege "any" other aggravating factors, the statute confines nonstatutory factors to those that are consistent with the language, structure, and purpose of the death penalty statute. *See United States v. Davis,* 904 F.Supp. 554, 559 (E.D.La.1995) (*Davis I* ).... Moreover, the prosecutor's power to articulate non-statutory aggravating factors is supported by Supreme Court death penalty jurisprudence. The Supreme Court has consistently held that the sentencing decision should be an "individualized determination on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Therefore, the ability to assert non-statutory aggravating factors does not inject into the proceedings the uncertainty that the Supreme Court held was fatal to the capital sentencing scheme in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Instead, it ensures the particularity in sentencing that was held essential in *Zant,* 462 U.S. at 879, 103 S.Ct. 2733. These "factors

are simply a means to provide the jury with additional information about the defendant, just as a defendant is free to provide with regard to information in mitigation. In that sense, the government (and the defense) are engaging in advocacy...." *Davis I,* 904 F.Supp. at 559.

Second, the role fulfilled by the non-statutory aggravating factors also belies Defendant's claim that the death penalty will be arbitrarily and capriciously imposed. The government cannot rely solely on non-statutory aggravating factors in urging the imposition of the death penalty. Instead, non-statutory aggravating factors become relevant only after the jury finds the requisite culpable intent and at least one statutory aggravating factor. *See* § 3593(e). Therefore, by definition, the sentencing determination cannot be premised solely on non-statutory aggravating factors. *See* § 3593(d) (stating that if "no aggravating factor set forth in § 3592 is found to exist, the court shall impose a sentence other than death authorized by law.")

Lastly, the trial judge's discretion in controlling the information presented to the jury acts as a further constraint on the prosecutor's presentation of non-statutory aggravating factors. The judge is obligated to ensure that the aggravating factors serve the purpose of selecting the Defendant for the death penalty with individualized consideration of his character and the particular conduct in the offense. The trial judge is also vested with considerable discretion in determining what information the jury should be allowed to consider at the sentencing hearing and must exclude information if it's [sic] probative value is outweighed by the risk of unfair prejudice. *See* § 3593(c). Therefore, contrary to what Defendant argues, § 3592(c) does not reflect unrestrained sentencing authority.

1997 WL 716487 at *4–5 (footnote omitted).

The court in *Kaczynski* also noted that although the Supreme Court has yet to address the propriety of using non-statutory aggravating factors under the Federal Death Penalty Act, it has expressly held the use of such factors constitutional under state capital sentencing schemes. *Id.* at *4, n. 4 (*citing Zant v. Stephens,* 462 U.S. 862, 878, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), and *Barclay v. Florida,* 463 U.S. 939, 966–67, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (Stevens, J., concurring)).

The court is persuaded by *Kaczynski's* reasoning on this point. Accordingly, Mr. Glover's motion on this ground is denied.

B. *Non–Delegation Doctrine.*

Mr. Glover next argues that allowing the prosecutor to define the non-statutory factors amounts to an unconstitutional delegation of legislative power to the executive branch. This argument has been considered and rejected by the Tenth Circuit. *See United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996), *cert. denied,* 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997). In *McCullah,* the defendant challenged the identically-worded provision in 21 U.S.C. § 848, the Anti–Drug Abuse Act of 1988. The Tenth Circuit held that the prosecutorial discretion to promulgate non-statutory aggravating factors "falls squarely within the permissible delegation of power to the Executive Branch." *Id.* at 1106–07. A district court in Kansas has reached the same result under the Federal Death Penalty Act. *See Nguyen,* 928 F.Supp. at 1536–37. The court finds both decisions well-reasoned and persuasive. Accordingly, Mr. Glover's motion to strike the non-statutory aggravating factors for violating the non-delegation doctrine is denied.

C. *Ex Post Facto Clause.*

█ Mr. Glover next claims that allowing the government to define the non-statutory factors after the commission of the offense violates the Ex Post Facto Clause. Article I, Section 10, of the Unit-

ed States Constitution forbids the passage of any ex post facto law. The government correctly notes, however, that the Ex Post Facto Clause is only implicated by "laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dept. of Corrections v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (quoting *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)); *accord, United States v. Cabrera–Sosa,* 81 F.3d 998, 1001 (10th Cir.), *cert. denied,* 519 U.S. 885, 117 S.Ct. 218, 136 L.Ed.2d 151 (1996); *Hatch v. Oklahoma,* 58 F.3d 1447, 1463–64 (10th Cir.1995), *cert. denied,* 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996). More specifically, the Supreme Court has held that procedural changes in a capital sentencing scheme which alter the method of determining whether the death penalty is to be imposed do not implicate ex post facto concerns. *Dobbert v. Florida,* 432 U.S. 282, 293–94, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *accord Hatch,* 58 F.3d at 1464; *McVeigh,* 944 F.Supp. at 1486.

Here, the statutes which define the crime and available punishments at issue were all in effect at the time of the robbery and homicide at the Kum & Go on May 31, 1998. "The fact that the government alleged non-statutory aggravating factors does not change the definition of crimes, nor the quantum of punishment available." *Nguyen,* 928 F.Supp. at 1538. *See also Walton v. Arizona,* 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (noting that aggravating factors do not constitute separate penalties or offenses). Accordingly, the court finds that the use of non-statutory aggravating factors does not violate the Ex Post Facto Clause.

### D. *Bill of Attainder.*

■ Next, Mr. Glover argues that the non-statutory factors constitute an uncon-

stitutional bill of attainder proscribed by Article I, Section 9 of the Constitution. Mr. Glover asserts that "[w]hen ... aggravating factors are created on an *ad hoc* basis and applied against only one individual, as here, they constitute a bill of attainder." Mr. Glover's Brief (Doc. # 201) at 11.

Article I, Section 9 provides, "[n]o Bill of Attainder ... shall be passed." U.S. Const. art. I, § 9, cl. 3. A bill of attainder is " 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group,* 468 U.S. 841, 846–47, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984) (quoting *Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)); *see also United States v. Patzer,* 15 F.3d 934, 942 (10th Cir.1993). Because this court finds that Mr. Glover has not met the definition of a bill of attainder, his argument must be rejected.

### E. *"Proportionality Review."*

■ Mr. Glover next asserts that the Federal Death Penalty Act violates the Eighth Amendment because it permits use of nonstatutory aggravating factors without accompanying "proportionality review." [7] Mr. Glover maintains: "[t]he omission of proportionality review is fatal, however, in a statute that permits the prosecution to create and rely on nonstatutory aggravating factors at will in capital sentencing, and that then requires the jury to weigh such factors in the death decision." Mr. Glover's Brief (Doc. # 201) at 13. Mr. Glover relies on *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). In *Gregg* and *Zant,* the Supreme Court reviewed a Georgia capital

---

**7.** Mr. Glover adopts the definition of "proportionality review" as stated in *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), which, rather than inquiring whether the penalty is proportional to the crime, "pur-

ports to inquire ... whether the penalty is ... unacceptable in a particular case because disproportionate to the punishment imposed on others convicted of the same crime." *Id.* at 43, 104 S.Ct. 871.

# 1231

sentencing scheme allowing non-statutory aggravating factors. Mr. Glover argues that in both cases, the Supreme Court noted "the importance of proportionality review as a necessary safeguard against arbitrary sentencing." Mr. Glover's Brief (Doc. # 201) at 12.

The government correctly points out, however, that in *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the Supreme Court expressly rejected a similar argument. Discussing the defendant's reliance on *Zant,* the Court in *Pulley* stated:

> While emphasizing the importance of mandatory appellate review under the Georgia statute,*id.,* at 875, 103 S.Ct., at 2742, we did not hold that without comparative proportionality review the statute would be unconstitutional. To the contrary, we relied on the jury's finding of aggravating circumstances, not the State Supreme Court's finding of proportionality, as rationalizing the sentence. Thus, the emphasis was on the constitutionally necessary narrowing function of statutory aggravating circumstances. Proportionality review was considered to be an additional safeguard against arbitrarily imposed death sentences, *but we certainly did not hold that comparative review was constitutionally required.*

*Pulley,* 465 U.S. at 50, 104 S.Ct. 871 (footnote omitted, emphasis added).

Additionally, as noted in *Nguyen,* federal district courts addressing 21 U.S.C. § 848 (also a weighing statute allowing consideration of non-statutory factors) have unanimously held there is no requirement of proportionality review. *Nguyen,* 928 F.Supp. at 1537 (citing *United States v. Walker,* 910 F.Supp. 837, 851–52 (N.D.N.Y.1995); *United States v. Bradley,* 880 F.Supp. 271, 284 (M.D.Pa.1994); *United States v. Pitera,* 795 F.Supp. 546, 559–60 (E.D.N.Y.1992); *United States v. Pretlow,* 779 F.Supp. 758, 768–69 (D.N.J.1991); *United States v. Cooper,* 754 F.Supp. 617, 626 (N.D.Ill.1990)). Based on the foregoing, Mr. Glover's motion to strike the non-

statutory aggravating factors for lack of proportionality review is denied.

### F. *Cruel and Unusual Punishment.*

Mr. Glover next argues that under all circumstances, the death penalty is cruel and unusual punishment prohibited by the Eighth Amendment. Such argument is foreclosed by Supreme Court decision. *See McCleskey v. Kemp,* 481 U.S. 279, 300–303, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). *See also United States v. McVeigh,* 944 F.Supp. 1478, 1484 (D.Colo.1996) (holding such a claim foreclosed by Supreme Court decisions, and citing *McCleskey* ). Thus, Mr. Glover's motion to strike the nonstatutory aggravators on this ground is denied.

### III. *Motion to Strike the Constitutionally Deficient Notice of Intent to Seek the Death Penalty (Doc. # 215).*

Although the Federal Death Penalty Act does not address the scope of information required to be provided by the government in the notice, the notice "must nonetheless survive[ ] constitutional scrutiny.... At a minimum, due process requires a defendant to receive notice of aggravating factors to enable him to respond and prepare his case in rebuttal." *Kaczynski,* 1997 WL 716487 at 19–20 (noting that although the statute was not explicit, the court had inherent authority to require procedure adherent to constitutional due process).

As to each of the aggravators the government intends to prove in Mr. Glover's case, the government's death penalty notice (Doc. # 177) provides only conclusory, bare allegations, and fails to inform Mr. Glover as to how or why it applies to his particular case, and the supporting facts. The court finds that its rulings with respect to Mr. Glover's Motion to Strike Specific "Aggravators" (Doc. # 202) have adequately addressed this motion as well. Accordingly, the court finds that Mr. Glover's Motion to Strike the Constitutionally Deficient Notice of Intent to Seek the Death Penalty (Doc. # 215) should be and hereby is denied with respect to Mr. Glo-

ver's request to strike the statutory and non-statutory aggravators.

■ During oral argument on this motion, defense counsel asserted that the government's failure to provide sufficient notice by the agreed-upon deadline of November 2, 1998 warrants striking the aggravators. The court, however, observes that the notice must only be served "a reasonable time before the trial," *see* § 3593(a). Defense counsel have failed to demonstrate any actual prejudice to Mr. Glover arising from any delay after November 2, 1998 in receiving notice of the aggravating factors. The court therefore rejects Mr. Glover's argument that the aggravating factors should be stricken for failing to provide sufficient notice by the previously agreed-upon deadline.

Mr. Glover also argues that the notice should be stricken for failure to provide sufficient notice as to which one of the four gateway intent factors the government intends to prove. Mr. Glover argues that the court should require the government to immediately elect which gateway factor it intends to present at the penalty phase. In Mr. Glover's Motion for Bill of Particulars, addressed *infra*, Mr. Glover suggests in the alternative that the government be required to allege a distinct factual basis for each of the four gateway intent factors. The court finds that in ruling on Mr. Glover's Motion for Bill of Particulars, *infra*, the court has adequately disposed of this issue by granting Mr. Glover the relief he requested in that motion. Accordingly, Mr. Glover's Motion to Strike the Constitutionally Deficient Notice of Intent to Seek the Death Penalty (Doc. # 215) is hereby denied as moot with respect to Mr. Glover's request to require the government to elect one of the four gateway intent factors.

### IV. *Motion for Bill of Particulars (Doc. # 216).*

■ Mr. Glover requests an order directing the government to file a bill of particulars as to each aggravating factor listed in the death penalty notice (Doc.

# 177). The court does not believe that a bill of particulars is necessarily the correct procedural approach under these circumstances. *See* Fed.R.Crim.P. 7(f) (bill of particulars discussed in context of clarifying indictments; subsection (f) permits motion for a bill of particulars to be filed "before arraignment or within ten days after arraignment"). The court, however, has determined *supra*, in its discussion of Mr. Glover's Motion to Strike Specific "Aggravators" (Doc. # 202), that formulating some procedure to require the government's disclosure of its underlying factual basis for each aggravating factor is an appropriate exercise of this court's inherent authority. Pursuant to that authority, the court has granted Mr. Glover's request for more factual particularity regarding the government's aggravators. Mr. Glover states in his brief in support of his Motion for Bill of Particulars (Doc. # 217) that he is requesting a bill of particulars "to obtain meaningful notice." The court believes its directive to the government to provide factual amplification of the aggravators will fulfill Mr. Glover's objective of "meaningful notice," so that he may adequately defend against the aggravators. Thus, Mr. Glover's Motion for Bill of Particulars regarding the aggravating factors is denied as moot.

■ Mr. Glover also requests an order directing the government to file a bill of particulars as to each of the four gateway intent factors. The government's Notice of Intent to Seek the Death Penalty (Doc. # 177) alleges the following gateway intent factors:

1. The defendant intentionally killed John Brewer;

2. The defendant intentionally inflicted serious bodily injury that resulted in the death of John Brewer;

3. The defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in

the offense, and John Brewer died as a direct result of the act; or

4. The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and John Brewer died as a direct result of the act.

In Mr. Glover's Reply Brief (Doc. # 302) at p. 10, Mr. Glover urges the court to require the government to allege a distinct factual basis for each of the four gateway intent factors, or require the government to immediately elect which of the four gateway factors it intends to pursue. The court is of the view that the defendant is entitled to know the underlying factual basis for each of the gateway factors. Accordingly, pursuant to the court's inherent authority, the court directs the government to amend its death penalty notice (Doc. # 177) by March 12, 1999, articulating the specific factual basis underlying each gateway intent factor. This relief is granted in lieu of a bill of particulars.

In this motion, Mr. Glover also requests a pre-trial evidentiary hearing. In Mr. Glover's reply brief, he clarifies that he is seeking such a hearing to address the admissibility of unadjudicated offenses that will be presented by the government to establish certain non-statutory aggravators. The court denies this request as premature.

## V. Motion to Bar the Death Penalty as Racially Discriminatory (Doc. # 218).

Mr. Glover challenges his death penalty prosecution on grounds that it is arbitrary and capricious in violation of the Eighth Amendment, and under the equal protection component of the Fifth Amendment's Due Process Clause. The court has carefully considered the arguments and exhibits submitted by counsel, and concludes that Mr. Glover has met the threshold showing required under *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), by producing "some evidence that similarly situated defendants of other races could have been prosecuted [in federal court], but were not." *Id.* at 469, 116 S.Ct. 1480.

With respect to Mr. Glover's claim that race has played an impermissible role in the charging decision, Mr. Glover asserts that "across the United States, federal jurisdiction eligible death penalty cases [of similarly situated white defendants] have been left in state courts." Mr. Glover's Reply Brief (Doc. # 303) at 6. He presents, *inter alia*, evidence that in Nebraska, Todd Cook, a white male, was "handled through the state system in the January 25, 1995, robbery/murder at a convenience store" and evidence that in Missouri, Lawrence McCollum, a white male, committed a drug-related murder at an adult entertainment business and was prosecuted in state court. *Id.*

Mr. Glover also claims that race has played an impermissible role in the Attorney General's decisions to authorize prosecution under the death penalty. As to this claim, the court finds that Mr. Glover has presented statistical data, generated by the Department of Justice, showing that from January 27, 1995 to August 10, 1998, the Attorney General authorized a greater number of black defendants for death-penalty prosecution than white defendants. The court finds that, based upon this evidence, Mr. Glover is entitled to additional discovery, and certainly should be provided with statistical information incorporating the last six months of data.

Accordingly, the court finds that Mr. Glover's discovery requests should be granted. The government is given until March 17, 1999, to comply with the discovery requests set forth in Mr. Glover's Motion to Bar the Death Penalty as Racially Discriminatory and Memorandum in Support (Doc. # 218) at 26–27. Mr. Glover is given until March 31, 1999, to submit a brief to the court addressing the significance of the discovery obtained. The government is given until April 9, 1999, to file a response. Mr. Glover is given until

April 19, 1999, to file a reply. Mr. Glover's request for an evidentiary hearing, and his request to dismiss the prosecution's request for the death penalty, are denied as premature.

## VI. *Motion for Second Stage Procedures (Doc. # 236).*

In the event that Mr. Glover is convicted of a capital offense, Mr. Glover requests that the court use certain procedures during the penalty phase of the proceedings. Specifically, Mr. Glover requests: (1) an interim period of three working [8] days between the verdict and the beginning of the sentencing hearing; (2) that the court permit Mr. Glover to present evidence in mitigation before the government presents any evidence in aggravation; and (3) that the court strictly limit "victim impact" evidence by requiring all proffered victim impact testimony to comport with the procedures outlined by the court in *State v. Muhammad,* 145 N.J. 23, 678 A.2d 164 (1996).

With respect to Mr. Glover's request for an interval of time between the guilt phase and the penalty phase, the government states that it does not "particularly object" to some period of time between the two phases, but suggests that three days is excessive. The court concludes that it will take a recess of some duration, not to exceed three days, after the guilt phase. The court further finds that the specific length of time will depend on the circumstances of the case. The court will be in consultation with the parties as to the details of the specific length of time, if the court reaches the penalty phase of trial.

█ The government objects to Mr. Glover's proposal that he be permitted to present mitigating evidence prior to the government's presentation of evidence in aggravation. 18 U.S.C. § 3593 specifically provides, under the subsection titled **"Proof of mitigating and aggravating factors:"**

The government shall open the argument. The defendant shall be permitted to reply. The government shall then be permitted to reply in rebuttal. The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt.

Mr. Glover contends that the foregoing language of the statute "clearly indicates that the government should be allowed to argue the case first, but does not address the order of proof." Mr. Glover's Brief (Doc. # 236) at 5.

Mr. Glover's assertion that the statutory language does not apply to *evidence,* only *argument,* is without authority and is unpersuasive. First, the court finds that the excerpted portion of the statute clearly speaks to the order of proof. Second, even if it could be construed as ambiguous, the specific statutory language relied upon by Mr. Glover must not be read in isolation, but must be construed in the context of the entire subsection and the statute as a whole. When read in its full context, the subsection is drafted to address "*proof* of aggravating and mitigating factors." Third, it is the government's burden to prove, beyond a reasonable doubt, the existence of aggravating factors. Consistent with American jurisprudence, the party bearing the burden of proof proceeds first and last in all trial proceedings. Interpreting the statute to apply to the presentation of evidence, as well as argument, is thus consistent with American jurisprudence. Accordingly, Mr. Glover's request to present evidence in mitigation prior to the government's presentation of evidence in aggravation is overruled.

Mr. Glover next requests that the court adopt the procedures set out by the New Jersey Supreme Court in *State v. Muhammad,* 145 N.J. 23, 678 A.2d 164 (1996), regarding admission of victim impact evi-

---

**8.** At the hearing, counsel for Mr. Glover acknowledged that the days need not be three "working" days but could be three consecutive days.

dence. Specifically, Mr. Glover requests the following procedures:

1. All testimony be reduced to writing;

2. The court "weigh each specific point of the proffered testimony to insure that its probative value is not substantially outweighed by the risk of undue prejudice and misleading the jury," and to determine the relevance of the proffered testimony;

3. The court inform the victim's family that they will not be allowed to testify if the person is unable to control his or her emotions;

4. The witness is only permitted to read his or her previously approved testimony;

5. The court remind the victim's family that "any testimony concerning the victim's family members characterizations and opinions about the defendant, the crime, or the appropriate sentence" will not be permitted; and

6. The prosecutor's comments about victim impact evidence in his or her summation is strictly limited to the pre-approved testimony of the witnesses.

Mr. Glover's Brief (Doc. # 236) at 9–10. The government objects in general to any pre-trial submissions or hearings with respect to victim impact evidence.

■ In *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the Supreme Court overruled *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and held that the Eighth Amendment does not bar the admission of victim impact testimony in the sentencing phase of a capital trial:

We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A state may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed.

There is no reason to treat such evidence differently than other relevant evidence is treated.

In *Payne*, the Supreme Court reviewed a state sentencing scheme. The Federal Death Penalty Act specifically contemplates the use of victim impact evidence as an aggravating factor, see 18 U.S.C. § 3593(a). Although Congress expressly provided for the jury's consideration of victim impact evidence, it did not put any limits on what can be considered. *Id.* Such restrictions are "a matter for the court's discretion and must be determined with consideration for the limitation that the jury must not be influenced by passion or prejudice." *McVeigh*, 944 F.Supp. at 1491 (*citing Payne*, 501 U.S. at 825, 111 S.Ct. 2597).

■ Neither *Payne* nor the Federal Death Penalty Act speak to Mr. Glover's first three procedural requests. The court is mindful of its "authority and responsibility to control the proceedings consistently with due process," *Payne*, 501 U.S. at 836, 111 S.Ct. 2597. Mr. Glover's first request is granted insofar as the court will require the government to submit a written statement describing the proposed testimony as to each "victim impact" witness, which the court will review for undue prejudice in advance of the penalty phase. The court, in its discretion, finds that Mr. Glover's second and third requests are reasonable attempts to safeguard the potential for inflammatory testimony that would "risk a verdict impermissibly based on passion, not deliberation," *id.*, and thus are granted. The court further finds that Mr. Glover's fifth request should be granted. *Payne* did not overrule the prohibitions in *Booth* against the admission of "information concerning a victim's family members' characterization of and opinions about the crime, the defendant, and the appropriate sentence," *Payne*, 501 U.S. at 835 n. 1, 111 S.Ct. 2597 (Souter, J., concurring), which is the subject of Mr. Glover's fifth request.

■ The court denies Mr. Glover's fourth request. 18 U.S.C. § 3593 specifi-

cally authorizes the use of "oral testimony" during the penalty phase, and both the United States Supreme Court and the Tenth Circuit have upheld use of live, oral testimony during the penalty phase. *See Payne*, 501 U.S. at 826, 111 S.Ct. 2597; *United States v. McVeigh*, 153 F.3d 1166, 1219–20 (10th Cir.1998).

As to Mr. Glover's sixth request, that the prosecutor's comments in his summation should be "strictly limited to the pre-approved testimony of the witnesses," the court is somewhat unclear as to the parameters of this request. To the extent this proposed limitation seeks to restrict what *Payne* has specifically authorized, to wit, that the prosecutor may "argue to the jury the human cost of the crime of which the defendant stands convicted," *Payne*, at 827, 111 S.Ct. 2597 (*overruling South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989)), the request is denied. *See also Payne*, at 832, 111 S.Ct. 2597 (O'Connor, J., concurring with White and Kennedy, JJ.) (prosecutor's comments in closing argument of penalty phase that the victim, a boy's mother, would never again sing a lullaby to her son, and that the other victim, the boy's sister, would never attend a high school prom, were constitutionally permissible).

In sum, the court makes the following rulings with regard to procedures for admission of victim impact evidence during the penalty phase:

 The government is directed to submit by April 5, 1999, a written statement describing the proposed testimony as to each "victim impact" witness it intends to call during the penalty phase. The testimony: (1) can provide "a quick glimpse of the life [the defendant] chose to extinguish" and demonstrate the loss to the victim's family and to society, *Payne*, at 830, 111 S.Ct. 2597; (2) can include a general factual profile of the victim, including information about the victim's family, employment, education, and interests; and (3) should be factual, not emotional, and free of inflammatory comments or references. The court will review the proposed statement, and weigh each specific point of the proffered testimony to ensure that its probative value is not substantially outweighed by the danger of unfair prejudice. Before each witness testifies, the court will inform the witness that the court will not allow a witness to testify if the person is unable to control his or her emotions. The court will also caution the witnesses that the court will not permit any testimony concerning the victim's family members' characterizations and opinions about the defendant, the crime, or the appropriate sentence.

IT IS THEREFORE ORDERED that Mr. Glover's Motion to Strike Specific "Aggravators" in the Government's Notice of Intent to Seek the Death Penalty (Doc. # 202) is granted in part and denied in part. The government is directed to elect between statutory aggravators # 1 and # 2. The government's first non-statutory aggravator is stricken. As to each specific aggravator, the government is directed to amend its Notice of Intent to Seek the Death Penalty to specifically articulate the factual basis for each aggravator, as more fully set forth in this order;

IT IS FURTHER ORDERED that Mr. Glover's Motion to Strike the Government's Notice of Intent to Seek the Death Penalty (Doc. # 201) is denied;

IT IS FURTHER ORDERED that Mr. Glover's Motion to Strike the Constitutionally Deficient Notice of Intent to Seek the Death Penalty (Doc. # 215) is denied;

IT IS FURTHER ORDERED that Mr. Glover's Motion for Bill of Particulars (Doc. # 216) is denied as moot with respect to the aggravating factors. With respect to the gateway intent factors, the court directs the government to amend the death penalty notice to articulate the specific factual basis underlying each gateway intent factor. This relief is granted in lieu of a bill of particulars;

IT IS FURTHER ORDERED that Mr. Glover's Motion to Bar the Death Penalty as Racially Discriminatory (Doc. # 218) is

denied as premature. Mr. Glover's request for discovery is granted as set forth in this order; and

IT IS FURTHER ORDERED that Mr. Glover's Motion for Second Stage Procedures (Doc. # 236) is denied in part and granted in part, as more fully set forth in this order.