**UNITED STATES of America**

v.

**CARLOS IVAN LLERA PLAZA,
Wilfredo Martinez Acosta,**

and

**Victor RODRIGUEZ**

Nos. CR.A. 98–362–10, CR.A. 98–362–11, CR.A. 98–362–12.

United States District Court,
E.D. Pennsylvania.

Dec. 21, 2001.

Thomas R. Perricone, U.S. Attorney's Office, Philadelphia, PA, David H. Resnicoff, Philadelphia, PA, for U.S.

Jules Epstein, Kairys & Rudovsky, Philadelphia, PA, Jose A. Muniz, New York City, Timothy J. Sullivan, Sullivan & Sullivan, College Park, MD, for Carlos Ivan Llera-Plaza.

Michael Giampietro, Krasner & Restrepo, Philadelphia, PA, L. Felipe Restrepo, Krasner & Restrepo, Philadelphia, PA, for Wilfredo Martinez Acosta.

Gerald A. Stein, Philadelphia, PA, Philip J. Degnan, Law Offices of Philip J. Degnan, Philadelphia, PA, Bernard L. Siegel, Philadelphia, PA, for Victor Rodriguez.

## OPINION

POLLAK, District Judge.

This is the second of two companion opinions filed by the court today in this matter. In this opinion, the court addresses two motions filed by the defendants. The first motion is entitled "Motion for Pretrial Ruling on Sufficiency and/or Reliability of Information Supporting Aggravating Factors Contained in the Notice to Seek the Death Penalty" (hereinafter "Motion for Pretrial Ruling").[1] The second is entitled "Motion to Strike and/or Dismiss the Notices and Amended Notices of Intent to Seek the Death Penalty" (hereinafter "Omnibus Motion"). The government has addressed both of these motions in a single document, and the court does so as well.

The Motion for Pretrial Ruling and the Omnibus Motion seek a number of rulings from the court relating to the procedures specified in the Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. §§ 3591–3598. In the first opinion issued today, which addresses the defendants' "Motion to Preclude a Penalty Phase Hearing and/or Im-

---

1. This motion was initially submitted only by defendant Llera Plaza, but was subsequently adopted by defendants Martinez Acosta and Rodriguez.

position of the Death Penalty because the 1994 Federal Death Penalty Act is Unconstitutional," the court concludes that, to the extent that the defendants' facial challenges to the procedures are ripe, the challenged procedures are not facially unconstitutional. This second opinion addresses a series of more specific arguments directed at the Notices of Intent ("NOIs") filed by the government to satisfy its obligations under 18 U.S.C. § 3593(a), which states:

(a) Notice by the government.—If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice—

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death. The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and

any other relevant information. The court may permit the attorney for the government to amend the notice upon a showing of good cause.

The government has filed notices of intent to seek the death penalty ("NOIs") for all three defendants: Carlos Ivan Llera Plaza ("Llera Plaza"), Wilfredo Martinez Acosta ("Martinez Acosta") and Victor Rodriguez ("Rodriguez"). Each NOI states that, for each of the capital counts against the defendants, the government proposes to prove all four of the statutory mental state factors listed in 18 U.S.C. § 3592(a)(1)(A-D). The NOIs then go on to list the aggravating factors (both statutory and non-statutory) that the government proposes to establish for each count against each defendant. In all, the government lists five different statutory aggravating factors in its NOIs:

- Grave risk of death to additional persons, § 3592(c)(5);

- Procurement of offense by payment, § 3592(c)(7)

- Pecuniary gain, § 3592(c)(8);

- Substantial planning and premeditation, § 3592(c)(9); and

- Multiple killings, § 3592(c)(16).

The government also lists five non-statutory aggravating factors in its NOIs:

- Future dangerousness of the defendant;

- Contemporaneous conviction for another killing;

- Victim impact;

- Contemporaneous conviction for a serious drug offense; and

- Defendant's participation in another killing, not charged in this case.[2]

---

2. The government does not plan to prove all of these aggravating factors for each defendant. For all but one of the five capital counts against Llera Plaza, the government lists the following aggravating factors: Pecuniary gain; Substantial planning and premeditation; Grave risk of death to additional persons; Multiple killings; Future danger-

The motions considered by this opinion challenge various FDPA procedures and the individual mental state and aggravating factors listed by the government in its NOIs. The court considers each challenge in turn.

I. *Motion for pretrial hearing on the sufficiency and/or reliability of the evidence the government intends to use to support its aggravating factors*

In the Motion for Pretrial Hearing and the Omnibus Motion, the defendants raise two arguments that are somewhat related. The first argument concerns the sufficiency of the evidence[3] the government will use to prove the aggravating factors it lists in its NOIs. The second argument concerns the sufficiency of the *notice* provided by the NOIs—that is, the claim by the defendants that they cannot adequately prepare for the sentencing phase of the trial without something more than a bare list of the aggravating factors the government intends to establish. The first of these arguments is primarily raised in the Motion for Pretrial Hearing. There, the defendants request a pre-trial (or, alternatively, pre-sentencing) hearing to determine what evidence the government intends to use to prove each of its aggravating factors, and whether that evidence will be sufficient to prove the relevant factors. The defendants contend that this will prevent the government from seeking to prove aggravating factors for which it lacks evidentiary support, and that it will limit the universe of information that defendants may be called upon to contest at the sentencing phase. For reasons outlined below, the request for a pretrial hearing will be denied.

The statutory provision governing the admission of evidence during the sentencing phase appears at 18 U.S.C. § 3593(c), which provides:

> At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592.... The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing

---

ousness of the defendant; Contemporaneous conviction for another Killing; Contemporaneous conviction for a serious federal drug offense; and Victim impact. For the remaining count (involving the murder of Jose Hernandez), the government lists all of the foregoing factors except the "Multiple killings" factor.

For all but one of the six capital counts against Rodriguez, the government lists the following aggravating factors: Procurement of offense by payment; Substantial planning and premeditation; Grave risk of death to additional persons; Future dangerousness of the defendant; Contemporaneous conviction for another killing; Contemporaneous conviction for a serious federal drug offense; and Victim impact. For the remaining count (involving the murder of Ricky Guevara–Velez),

the government lists all of the foregoing factors except the "Grave risk of death to additional persons" factor.

For all four of the capital counts against Martinez Acosta, the government lists the following aggravating factors: Pecuniary gain; Substantial planning and premeditation; Grave risk of death to additional persons; Multiple killings; Future dangerousness of the defendant; Contemporaneous conviction for another killing; Victim impact; and Defendant's participation in another killing, not charged in this case.

3. The court notes that "information" presented during the sentencing phase is not subject to the limitations imposed by the Federal Rules of Evidence. *See* 18 U.S.C. § 3593(c). The court will nevertheless refer to this information as "evidence."

admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

Thus, while § 3593(c) exempts the presentation of information during the sentencing phase from the requirements of the Federal Rules of Evidence, it requires 1) that any such evidence be relevant to a mitigating or aggravating factor and 2) that its probative value outweigh its potential negative effects. In order to ensure that the evidence to be presented by the government comports with these requirements, several courts have, prior to the sentencing phase, considered the relevance and reliability of evidence intended to be introduced by the government at the sentencing phase.

For example, the district court that heard the matter of *United States v. Davis,* 912 F.Supp. 938 (E.D.La.1996), conducted a pretrial review of the relevance of evidence the government proposed to introduce at the sentencing phase. It went on to state that to satisfy the "heightened" reliability requirements for a capital sentencing hearing, it would conduct a pretrial hearing to evaluate "the admissibility of the information the government intends to introduce in support of the nonstatutory aggravating factors" in order to "offset the risk of undue prejudice, confusion of the issues and/or misleading of the jury." *Id.* at 949. In a footnote, the court clarified that although its primary concern was "with unadjudicated criminal conduct, the remainder of the government's proposed presentation, such as victim impact, needs to be assessed and will be included in the hearing." *Id.* at 949 n. 27.

Similar concerns over the reliability of unadjudicated criminal conduct led the district court in *United States v. Beckford,*

964 F.Supp. 993 (E.D.Va.1997), to require the government to "submit a detailed proffer of the evidence of unadjudicated conduct at the end of the guilt phase of the trial" in order to allow the court to ensure that it was sufficient to meet threshold reliability standards. *See id.* at 1004 n. 11 (proceeding under death penalty provisions of Anti Drug Abuse Act ("ADAA"), 18 U.S.C. § 848). The court in *United States v. Friend,* 92 F.Supp.2d 534 (E.D.Va.2000), did the same, requiring the government to "file a proffer of the evidentiary basis" for a non-statutory factor that the court later struck from an NOI before the sentencing phase. *See id.* at 535. And the district court in *United States v. Gilbert,* 120 F.Supp.2d 147 (D.Mass.2000), struck from an NOI allegations of unadjudicated criminal conduct that were introduced to support the government's "other offenses" and "future dangerousness" non-statutory aggravating factors. The court made this pretrial ruling based on its determination that some of those crimes, even if proven, were not "relevant to the decision of who should live and who should die." *Id.* at 152. It went on to find the evidence supporting several other allegations of uncharged criminal conduct insufficiently reliable.

■ The foregoing cases indicate that this court has the authority to conduct a hearing to examine the reliability of evidence the government intends to introduce at the sentencing phase. However, when divorced from the issue of whether the defendants and the court have been adequately *notified* of what the government intends to prove at the sentencing phase— the issue considered in the next section— the cases do not support the proposition that such a hearing must be conducted before the guilt phase of the trial begins. *See United States v. Edelin,* 134 F.Supp.2d 59, 75 (D.D.C.2001) (denying defendant's

request for "pretrial adjudication as to the sufficiency of [sentencing] evidence" in an ADAA case); *United States v. Frank,* 8 F.Supp.2d 253, 278–79 (S.D.N.Y.1998) (finding such a hearing "unnecessary"). With respect to the case at bar, the court recognizes that, if a sentencing phase does take place, the period of time between the guilt phase and the sentencing phase may be brief. However, it appears that much of the evidence the government intends to introduce during the sentencing phase will be introduced during the guilt phase as well. The court will be in a better position to evaluate the relevance and probative value of this evidence after the guilt phase.

To the extent that the government plans to introduce evidence during the sentencing phase that has not already been introduced during the guilt phase, the court believes that the orders accompanying this opinion—orders which will require the government to explain in greater detail the evidence it intends to introduce during sentencing—will put the parties and the court in a better position to assess the need for a hearing to evaluate that evidence. The defendants may renew their evidentiary objections in light of the government's submissions, and the court will at that time reconsider the need for an evidentiary hearing. *See United States v. Bin Laden,* 126 F.Supp.2d 290, 304 (S.D.N.Y.2001) (proposing a pre-sentencing hearing to evaluate the validity of motions concerning sentencing phase evidence). At this time, however, the defendants' Motion for Pretrial Hearing will be denied.

## II. *Adequacy of the notice provided by the NOIs*

As described above, the defendants advance a second argument regarding the relationship between the NOIs and sentencing phase evidence. Their Omnibus Motion claims that the NOIs fail to provide sufficient notice [4] to them of what facts the government intends to prove during the sentencing phase of the trial. The defendants argue principally that, because the NOIs merely list the aggravating factors the government intends to prove, they fail to inform the defendants of precisely what evidence the government will attempt to introduce during the sentencing phase. As a result, the defendants request either that the offending aggravating factors be struck or that the court "order the government to respond to a bill of particulars or provide the court with a comprehensive outline of the information concerning the nature of the aggravating factors alleged in the death notices and the amended death notices." As explained below, some of the defendants' arguments have merit.

Other courts have ordered prosecutors to provide greater specificity in NOIs in order to allow the defendant to prepare adequately for sentencing proceedings and to allow the court to ensure the reliability of the evidence presented. Indeed, the NOIs considered by the courts in *Davis, Beckford,* and *Gilbert* were much more detailed than the ones in this case even before those courts ordered further clarification. However, these courts did not examine the source of their authority to enter such orders. One court that did so was *United States v. Kaczynski,* No. CR–S–96–259GEB, 1997 WL 716487 (E.D.Cal. Nov. 7, 1997), in which Judge Burrell explained:

> The language of [§ 3593(a) ] reveals nothing about the specificity of notice required. The government takes the position that since the statute does not

---

**4.** The Omnibus Motion challenges the factual sufficiency of the NOIs rather than their timing; this court has already ruled on the issue of whether the NOIs were filed a "reasonable time before the trial" as required by 18 U.S.C. § 3593(a). *See* Order of September 12, 2001.

expressly require anything more, a mere recitation of the aggravating factors it proposes to use is sufficient. Defendant, on the other hand, suggests that the government is obligated under Fed. R.Crim.P. 7 to provide a "plain, concise, and definitive written statement of the essential facts."

Defendant's contention that the pleading standard set forth in [Rule 7] governs death penalty notices is not persuasive. By its express language, [Rule 7] applies only to informations and indictments. Since aggravating factors are neither offenses nor elements of substantive offenses that must be alleged by indictment, [Rule 7] does not govern the nature or specificity of notice required under § 3593(a)....

Despite the fact that the notice need not comply with the strictures of Rule 7, it must nonetheless survive[ ] constitutional scrutiny. While many of the safeguards incident to criminal prosecutions do not apply to the sentencing process, it is axiomatic that due process principles must be satisfied. *See [Clemons v. Mississippi,* 494 U.S. 738, 746, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) ]; *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). The defendant's ability to defend against the case presented by the prosecutor, which includes advocating for a particular punishment, is one of the "hallmarks" of due process. *See Simmons v. South Carolina,* 512 U.S. 154, 175, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (O'Connor, J., concurring). Moreover, a defendant must not be sentenced to death on the basis of information which he had no opportunity to refute. *Id.* (quotations and citations omitted). Therefore, at a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and to prepare his case in rebuttal. In evaluating whether due process is satisfied, the Death Penalty Notice must be considered in conjunction with the offenses as charged in the indictment, which can provide the requisite specificity to an otherwise insufficient notice.

*Id.* at * 19 (some citations omitted).

Several other courts have adopted similar approaches. *See United States v. Minerd,* 176 F.Supp.2d 424, 448 (W.D.Pa.2001) (finding authority to require government to provide defendant with more information regarding the allegations in its NOI, but declining to exercise that authority where NOI and indictment together "sufficiently advise[d] the defendant of the charges he must be prepared to defend"); *Bin Laden,* 126 F.Supp.2d at 304–05; *United States v. Glover,* 43 F.Supp.2d 1217, 1231 (D.Kan.1999) (explicitly adopting *Kaczynski* approach); *see also United States v. McVeigh,* 944 F.Supp. 1478, 1488 (D.Colo.1996) ("The notice filed by the government gives the defendants the opportunity to prepare for the hearing and provides the court with some frame of reference for ruling on objections to the information offered at the hearing."); *United States v. Cooper,* 91 F.Supp.2d 90, 111 (D.D.C.2000) (citing *McVeigh* ). Other courts, however, have differed, suggesting instead that NOIs need do no more than recite the aggravating factors the government intends to prove. In *United States v. Battle,* 173 F.3d 1343, 1347 (11th Cir. 1998), the Eleventh Circuit upheld a trial court's decision to allow the government to amend its NOI on the eve of sentencing proceedings. The appellate court relied largely upon the fact that the amendment merely added factual specifics to the NOI that were previously absent. *See id.* But in doing so, the *Battle* court distinguished between notice of *factors* and notice of

*specific evidence;* it pointed out that while the former is explicitly required by § 3593(a), the latter is not. *See id.* The court went on to state that the government "is not required to provide any specific evidence" in its NOIs.

As support for its conclusion, *Battle* cited *United States v. Nguyen,* 928 F.Supp. 1525 (D.Kan.1996), in which a district court rejected the argument that a NOI was constitutionally defective because it failed to detail the evidence the government intended to offer in support of its aggravating factors. *See id.* at 1545–46. The court in *Nguyen* declared first that there is "no authority indicating that [Rule 7] applies to death notices." *Id.* at 1545. It then briefly distinguished *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), in which the Supreme Court had held that a capital defendant's constitutional rights were violated when he was sentenced to death based in part on a presentence report containing confidential information not disclosed to him.[5]

Having considered the arguments advanced in the parties' submissions and in the foregoing cases, the court concludes that 18 U.S.C. § 3593(a) does not require the government to produce the details of its sentencing phase evidence, and that Rule 7 is not applicable to NOIs submitted to satisfy FDPA requirements. However, the court agrees with the *Kaczynski* court that the Constitution requires that the defendants be given some notice of the type of evidence the government intends to introduce at the sentencing phase. The Supreme Court has repeatedly affirmed the principle that,

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."

*Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)) (other citations omitted). This opportunity would hardly be "meaningful" if the defense were forced to confront sentencing phase evidence without any notice of what that evidence might be. In order for the government's evidence to be subjected to "the crucible of meaningful adversarial testing," *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the NOIs, in conjunction with the indictment, must inform the defendants of the theories and facts that the government will use to establish each aggravating factor in this case.

For most of the aggravating factors proposed in this case, the defendants already have sufficient notice of what evidence will be presented at trial. As the government points out, the Sixth Superseding Indictment and its discovery disclosures trace the prosecution's theory of the case. The government's theory is that Rodriguez, as one of the heads of the "Rodriguez–Cacerez Drug Organization," paid Llera Plaza and Martinez Acosta to plan and commit multiple murders on the organization's behalf. The defendants have thus been given adequate notice of the facts the government will use to establish the statutory aggravating factors of Procurement of offense by payment, Pecuniary gain, and Substantial planning and premeditation.

---

**5.** In *Gardner,* Justice Powell, speaking for the court, concluded that "petitioner was denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." 430 U.S. at 364, 97 S.Ct. 1197.

18 U.S.C. §§ 3592(c)(7)-(c)(9).[6] Similarly, the titles of the non-statutory aggravating factors of "Contemporaneous conviction for another killing" and "Contemporaneous conviction for a serious drug offense" seem to provide notice to the defendants of the evidence that will be introduced to support those factors. The one remaining statutory aggravating factor—"Grave risk of death to additional persons"—and the three remaining non-statutory aggravating factors—"Future dangerousness of the defendant," "Victim impact," and "Defendant's participation in another killing, not charged in this case"—merit further discussion.

*Grave risk of death to additional persons*

■ The "grave risk of death to additional persons" statutory aggravating factor has the following description in the FDPA:

> **Grave risk of death to additional persons.**—The defendant, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense.

18 U.S.C. § 3592(c)(5). As the defendants point out, neither the indictment nor the NOIs specify which "additional persons" the defendants are alleged to have put at risk during their alleged crimes.

With respect to counts 24, 25, 26, 29, and 30 of the Sixth Superseding Indictment, involving the simultaneous murders of Jorge Martinez and Luis Garcia, the government's responsive memorandum indicates that it intends to prove that when Martinez and Garcia were murdered, "a third person in the car narrowly escaped the fusillade of bullets," and was thus put at "grave risk of death." The government's Trial Memorandum further specifies that the third occupant of the car was Carlos Velazquez, a friend of Martinez, who "was able to dive out the open rear passenger door onto the sidewalk as the shooting started and was not physically wounded." The government will therefore be ordered to confirm that, with respect to counts 24, 25, 26, 29, and 30, it will establish the "grave risk of death to additional persons" aggravating factor by referring to Velazquez.

The government's responsive memorandum does not discuss the application of the "grave risk of death to additional persons" aggravating factor to count 33, which charges Llera Plaza and Rodriguez with the murder of Jose Hernandez. The government's submissions to this court do not suggest the identities of the "additional persons" put at risk during that murder. The government will therefore be ordered to submit an outline of the information it intends to use to establish the "grave risk of death to additional persons" aggravating factor with respect to count 33.

*Future dangerousness of the defendant*

The government's NOIs list the following non-statutory aggravating factor for all of the capital charges against each defendant:

> **Future Dangerousness of the Defendant.** The defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of others.

With respect to this factor, the defendants argue first that since Congress did not codify "future dangerousness" as a statutory aggravating factor, it intended that the factor not be used at all. The defendants'

---

**6.** See footnote 2, *supra,* for a list of aggravating factors applicable to each count against each defendant.

only citation—to a Ninth Circuit case interpreting trucking rate provisions, *West Coast Truck Lines v. Arcata Comm. Recycling,* 846 F.2d 1239, 1244 (9th Cir.1988)—does not support this conclusion.

A second defense argument[7] regarding this non-statutory aggravating factor is that it does not adequately notify them of all the evidence that the government plans to use to prove future dangerousness. In several reported cases, FDPA prosecutors have sought to establish the non-statutory aggravating factor of "future dangerousness" by introducing evidence of a defendant's unadjudicated prior criminal activity. Such evidence would normally be inadmissible during the guilt phase if used to prove a defendant's bad character. *See* Fed.R.Evid. 404(b). As noted above, however, the rules of evidence do not apply to FDPA sentencing proceedings. Nevertheless, given the potential problems with the reliability of such evidence and the risk that it may mislead, courts have been careful to require the government to fully disclose all of the unadjudicated misconduct that it plans to introduce as sentencing phase evidence. *See, e.g., Glover,* 43 F.Supp.2d at 1227–28; *Kaczynski* at *20; *Davis,* 912 F.Supp. at 949; *cf.* Fed R. Evid. 404(b) (allowing evidence of other crimes for limited purposes, "provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce"). The reasoning of these courts is sound, and the court will therefore order the government to submit an outline of the evidence it intends to introduce to support the non-statutory aggravating factor of "future dangerousness." This outline will include a description of any unadjudicated act of misconduct that the government intends to prove.

*Victim impact*

■ For each of the capital counts in this case, the government has stated that it will seek to establish the aggravating factor of "victim impact," described as follows:

> **Victim Impact.** The defendant's murder of [victim] has caused injury, harm, and loss to the victim, and to the victim's family, because of the victim's personal characteristics and potential as an individual human being and the consequent impact of the death upon the victim's family.

The FDPA specifically allows the government to introduce during the penalty phase "factors concerning the effect of the offense on the victim and the victim's family," *see* 18 U.S.C. § 3593(a), but the defendants request more specific notice of what evidence the government plans to present to establish this factor.

Similar requests have been granted by other district courts. *See Bin Laden,* 126 F.Supp.2d at 304 (requiring "a limited bill of particulars specifying the particularized categories of 'injury, harm, and loss' that will be proffered at sentencing, whether it be suffered by a victim or a victim's family");[8] *Cooper,* 91 F.Supp.2d at 111 (requiring government to include "more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to

---

**7.** The defendants also argue that the jury must be instructed that the only "future danger" it can consider is that posed by the defendants in a prison setting. This argument is considered below.

**8.** The *Bin Laden* court issued this order despite the fact that Rule 7 of the Federal Rules of Criminal Procedure mentions bills of particular only in the context of indictments and informations.

each victim's 'personal characteristics' that the government intends to prove"); *Glover*, 43 F.Supp.2d at 1225 (granting defendant's request for "greater specificity" with regard to non-statutory aggravating factor of "permanent harm"). The government suggests no reason why, in this case, it would be unable to produce a summary of its victim impact evidence similar to the ones required by these three courts. Therefore, in order to allow the defendants to adequately prepare responses to sentencing phase evidence, and in order to allow the court to determine if a pre-sentencing hearing will be necessary to review that evidence, the government will be ordered to submit an outline of its proposed victim impact evidence.

*Defendant's participation in another killing, not charged in this case*

█ Defendant Martinez Acosta argues that the proposed non-statutory aggravating factor charging his "participation in another killing, not charged in this case" fails to adequately notify him of the evidence that the government plans to use to prove the factor. The NOI describes this aggravating factor as follows:

> **Defendant's Participation in Another Killing, not Charged in This Case.** The defendant participated in the killing of Carlos Maysonet Adorno in Rio Piedras, Puerto Rico, on September 12, 1997.

Because proof of this aggravating factor will involve the introduction of evidence of an unadjudicated crime, Martinez Acosta requests that the government "produce the specific information that it intends to introduce in support of this murder." For the reasons stated in the analysis of the notice provided by the "Future dangerousness of defendant" factor, above, this request will be granted. The government will be ordered to submit an outline of the evidence

it intends to use to establish Martinez Acosta's role in the killing of Carlos Maysonet Adorno.

III. *Venue for NOIs relating to the shooting death of Ricky Guevara–Velez.*

The Omnibus Motion argues that the Eastern District of Pennsylvania is an improper venue for charges relating to the shooting death of Ricky Guevara–Velez. This court has already ruled that venue for these charges is proper in this district, in an order dated September 4, 2001.

IV. *Use in the NOIs of the phrase "justifying a sentence of death" and reference to "statutory proportionality" factors.*

In each of its NOIs, the government states that it "proposes to prove the following factors as justifying a sentence of death," and then lists the mental states identified in 18 U.S.C. § 3591(a)(2), describing them as "statutory proportionality factors." The defendants claim that these two phrases employ improper terminology and will confuse the jury. The government responds that the jury will not be confused because they will not receive the NOIs. This appears to be correct, since 18 U.S.C. § 3593(a) states only that the NOIs shall be signed and filed with the court and served on the defendants. The defendants' motion to strike these two phrases from the NOIs will therefore be denied.

V. *Misuse of FDPA threshold mental state factors as aggravating factors.*

█ The FDPA provides that, as a predicate for a death sentence under the Act,[9] a jury must find beyond a reasonable doubt that the defendant:

---

**9.** Other than for an offense described in 18 U.S.C. § 794 (penalizing the gathering or de-

livering of defense information to aid a for-

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury that resulted in the death of the victim;

(C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act ....

*Id.* § 3591(a)(2). For each count against each defendant, the NOIs allege that the defendant committed the offense at issue with each of these four mental states. The defendants make a series of arguments regarding these allegations. Their first argument is that the NOIs plead the mental state factors listed in 18 U.S.C. § 3591(a)(2) as aggravating factors, or in such a way that the jury will treat them as aggravating factors. Under the FDPA, the mental state factors are gatekeepers— once the government proves any one of the four factors, they are not supposed to have further effect on the sentencing phase. The defendants, however, contend that the NOIs in this case misrepresent the role of the § 3591(a)(2) factors and that a jury cannot help but confuse the mental state factors with aggravating factors presented later in the sentencing phase.

As an initial matter, it does not appear that the FDPA requires the government to include allegations regarding the § 3591(a)(2) factors at all. Section 3591

does state that in order to return a death sentence, the jury must find that the defendant possessed one of the listed mental states "at the hearing under section 3593"—that is, at the sentencing hearing. However, § 3593(a), which requires the government to produce NOIs, does not specifically require that NOIs list the § 3591(a)(2) factor or factors the government intends to prove. But the defendants do not argue that the NOIs are defective for listing the mental states that the government will try to prove. Instead, they argue that the NOIs so misrepresent the role of the § 3591(a)(2) factors that a jury cannot help but confuse the threshold mental state factors with aggravating factors presented later in the sentencing phase.

This challenge lacks merit. As noted above, the NOIs will not be turned over to the jury, so any ambiguities they contain can be obviated with proper jury instructions. Moreover, the pertinent case law indicates that a properly instructed jury can be expected to separate its findings regarding threshold mental state factors from its weighing of aggravating and mitigating factors. *See United States v. Webster,* 162 F.3d 308, 323–24 (5th Cir.1998) (upholding FDPA death sentence where jury was clearly instructed to separate its threshold mental state findings from its weighing of aggravating and mitigating factors); *Cooper,* 91 F.Supp.2d at 109 (citing *Webster* and holding that even "[i]f the jury finds one or all four of the factors, there is no risk of skewing because the jury finds intent, and then starts with a clean slate in evaluating separate aggravating factors"); *Battle,* 979 F.Supp. at 1468 ("Allowing the jury at sentencing to determine whether the section 3591 factors had been proven did not unconstitutionally skew the weighing process in this case in

eign government) or § 2381 (penalizing treason).

favor of death.").[10] As a result, the defendants' motion to strike from the NOIs the government's allegations regarding the threshold intent factors will be denied.

## VI. *Constitutional adequacy of § 3591(a)(2)(A) and (C).*

■ After challenging the inclusion of the threshold mental state factors in the NOIs, the defendants make three attacks upon the individual mental state factors alleged by the government in the NOIs. They first argue that the four threshold mental state factors listed in § 3591(a)(2)(A-D) are unconstitutionally overbroad. In support of their argument, the defendants cite four Supreme Court cases: *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); and *Stringer v. Black,* 503 U.S. 222, 235, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). These cases support and explain the idea that aggravating factors in capital cases cannot be so vague and imprecise as to invite arbitrary and capricious application of the death penalty. *See Stringer,* 503 U.S. at 226, 112 S.Ct. 1130 (Mississippi aggravating factor that the murder was "especially heinous, atrocious or cruel"); *Clemons,* 494 U.S. at 741, 110 S.Ct. 1441 (same Mississippi fac-

tor); *Maynard,* 486 U.S. at 363–64, 108 S.Ct. 1853 (Oklahoma aggravating factor that murder was "especially heinous, atrocious or cruel"); *See Godfrey,* 446 U.S. at 428–30, 100 S.Ct. 1759 (considering Georgia aggravating factor of "outrageously or wantonly vile, horrible, or inhuman" murder). As a result, the court takes the defendants' "overbreadth" argument to be that the § 3591(a)(2) threshold mental state factors are unconstitutionally vague and imprecise.

No federal court has adopted the defendants' position regarding the vagueness of the § 3591(a)(2) threshold mental state factors. To the contrary, the courts that have considered various § 3591(a)(2) factors have held that they are sufficiently clear to guide the jury's deliberations. *See Minerd,* 176 F.Supp.2d at 438 (finding that § 3591(a)(2)(D) has a "common sense meaning"); *United States v. Johnson,* 96-CR-379, 1997 WL 534163 at *2 (N.D.Ill. Aug. 20, 1997) (holding that § 3591(a)(2)(C) "provide[s] more than adequate guidance to a jury; [it is] not unconstitutionally vague"); *see also United States v. Flores,* 63 F.3d 1342, 1371–72 (5th Cir.1995) (finding that similar intent factors in ADAA, 21 U.S.C. § 848(n)(1)(A-D), narrow the class of death-eligible defendants as required by the Constitution);

---

**10.** In at least two cases, *United States v. Chanthadara,* 928 F.Supp. 1055 (D.Kan.1996), and *Nguyen,* 928 F.Supp. at 1541, district courts have allowed the government to use "mental state" as a non-statutory aggravating factor after the government had already made its showing regarding § 3591(a)(2) factors. In *Chanthadara,* the court distinguished between the *threshold* mental state showing that the government had to make—in which it allowed the government to make multiple allegations of mental state—and the government's use of mental state as an *aggravating factor*—in which it restricted the government to proof of a single mental state. *See id.* at 1058 (citing

*United States v. McCullah,* 76 F.3d 1087, 1111 (reviewing 21 U.S.C. § 848 death penalty), *reh'g denied* 87 F.3d 1136 (10th Cir.1996)). *Nguyen* agreed, stating that "while the § 3591(a)(2) mental states act as threshold or 'gateway' findings, there is nothing in the plain language of the statute limiting them exclusively to that role." *Id.* at 1540. In this case, however, the government does not plan to introduce mental state evidence as a non-statutory aggravating factor, and the court does not need to reach the issue of whether the § 3591(a)(2) mental state factors can be used as aggravating factors as well.

*United States v. Davis,* 904 F.Supp. 554, 558 (E.D.La.1995) (following *Flores* in a FDPA case).

This court agrees. The language of §§ 3591(a)(2) is much more precise than the "heinous, atrocious or cruel" language considered by the Supreme Court in *Stringer, Clemons,* and *Maynard,* or the "outrageously or wantonly vile, horrible, or inhuman" language considered in *Godfrey.* Although some clarifying jury instructions may be necessary, §§ 3591(a)(2) describes each of the four threshold mental states in terms that have a common and familiar meaning. As a result, the defendants' motion to strike from the NOIs allegations regarding §§ 3591(a)(2)(A-D) will be denied.

**VII.** *Applicability of §§ 3591(a)(2)(A) and (B) to Llera Plaza and Rodriguez.*

The defendants' second specific attack on the threshold mental state factors is that the "intentional killing" and "intentional infliction of serious bodily harm" mental state factors are inapplicable to Llera Plaza and Rodriguez. In an order entered on December 14, 2001, the court ordered further submissions from the parties regarding this issue and related issues, and the court will rule on defendants' contention after considering those submissions.

**VIII.** *Consideration of § 3591(a)(2)(D) as a mitigating factor.*

■ The defendants' third argument regarding the mental states described in § 3591(a)(2) is that the threshold mental state factor in § 3591(a)(2)(D) is "really a mitigating factor." Section 3591(a)(2)(D) states that the death sentence can be imposed for any crime in which it is authorized if, among other things, the defendant

intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act . . . .

The defendants' argument lacks merit for several reasons. First, as stated above, § 3591(a)(2)(D) is not listed in the government's NOI as an aggravating factor. It is listed, as it is in the FDPA, as a threshold mental state factor. Second, the case that the defendants cite, *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), does not support their argument. *Stephens* does suggest—in dictum—that a state cannot attach the label of "aggravating factor" to conduct that actually militates "in favor of a lesser penalty." *Id.* at 885, 103 S.Ct. 2733. But as an example of that proposition, *Stephens* cites *Miller v. Florida,* 373 So.2d 882 (Fla.1979), in which the Florida Supreme Court vacated a death sentence imposed in part because the trial judge believed that the defendant's mental illness made him incurably violent. The *Miller* court held only that the list of aggravating factors in Florida's death penalty statute—a list that did not include mental illness—was exclusive, *id.* at 885–86; neither *Stephens* nor *Miller* suggests that the threshold mental state factor listed in 18 U.S.C. § 3591(a)(2)(D) is constitutionally defective.

Third, the § 3591(a)(2)(D) threshold mental state factor appears to be constitutionally unproblematic because it tracks language in a Supreme Court decision describing the minimum intent requirements for a capital conviction. In *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the Supreme Court held that

the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

481 U.S. at 157–58, 107 S.Ct. 1676. Section 3591(a)(2)(D) appears to mirror this language. *See Webster,* 162 F.3d at 355 ("Section 3591(a) codifies the command in [*Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982)] and *Tison* ...."). The threshold mental state described in § 3591(a)(2)(D) can therefore be appropriately described as a minimum threshold for imposition of the death penalty.[11] As a result, the defendants' motion to strike § 3591(a)(2)(D) from the government's NOIs will be denied.

## IX. *Allegation of multiple mental states for each defendant*

██ The defendants' final argument regarding the § 3591(a)(2) threshold mental state factors is that the government should not be allowed to try to prove all four factors for each crime. The defendants contend first that doing so is illogical; a defendant cannot simultaneously possess more than one mental state. Second, they argue that allowing the jury to find that any of the defendants in this case possessed more than one of the necessary mental states would "impermissibly skew the process towards a sentence of death."

Both of these arguments rest to some degree on the idea that the jury cannot be expected to separate its findings regarding a defendant's mental state from its weighing of aggravating and mitigating factors. As discussed above, a properly instructed jury can be expected to separate these two tasks. The question that remains is whether it is proper to allow the government to plead in the alternative regarding the mental state factors. None of the other courts to have considered this issue has refused to allow the government to plead alternative mental state allegations. *See United States v. Causey,* 185 F.3d 407, 412 (5th Cir.1999) (en banc) (implicitly allowing multiple mental state allegations in noting jury's finding of both the mental state element described in 18 U.S.C. § 3591(a)(2)(C) and the one in § 3591(a)(2)(A)); *Webster,* 162 F.3d at 355 (rejecting claim that multiple mental state allegations constituted "double counting" of aggravating factors); *United States v. Kee,* S1–98–CR–778, 2000 WL 863119 at *11 (S.D.N.Y. June 27, 2000) (finding "unpersuasive" the argument that allowing government to allege all four threshold mental state factors "would cause the jury to give Kee's mental state four times the weight it is due in determining whether or not to impose the death penalty" because the enumerated mental states "are not four separate aggravating factors, and are not in any sense unfairly duplicative of one another"); *Cooper,* 91 F.Supp.2d at 110 (citing *Webster* in allowing multiple mental state allegations); *Nguyen,* 928 F.Supp. at 1541 (rejecting argument that government must elect a single § 3591(a)(2) mental state factor to prove); *Chanthadara,* 928 F.Supp. at 1058 (allowing multiple allegations of mental state for purposes of threshold determination); *see generally*

---

**11.** The government does not contend that the FDPA prevents the defendants from introducing evidence of their mental state as a mitigating factor, nor does the court believe that this is the case. *Cf. Nguyen* 928 F.Supp. at 1539 ("most evidence is subject to a dual interpre-

tation, and [the government] should not be foreclosed from presenting the evidence as aggravating simply because Nguyen intends to argue that it is mitigating") (citing *Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994)).

*United States v. Paul,* 217 F.3d 989, 997 (8th Cir.2000) ("The best way to comply with section § 3591(a)(2) is to actually use the language of the statute in the jury instruction.").

The cases therefore support the view that the government is allowed to attempt to prove more than one threshold mental state in an FDPA proceeding. This rule accords with the general practice in evaluation of criminal indictments; alternative allegations in a single count of an indictment are impermissible only when they are inconsistent—that is, when proof of one would necessarily disprove the other. *See, e.g., Douglas v. Long,* 661 F.2d 747, 749 (9th Cir.1981); *Sutton v. United States,* 434 F.2d 462, 473 (D.C.Cir.1970) (noting ability of government to charge lesser included or alternate offenses "to allow for contingencies in proof"); *Cohen v. Wilhelm,* 63 F.2d 543, 545 (3d Cir.1933) ("Repugnancy in a pleading is an inconsistency or disagreement between statements of material facts."). Here, the mental states are not mutually exclusive; for example, proof that a defendant intentionally engaged in a violent act knowing that the act would cause grave risk of death to a person is not inconsistent with proof that the defendant intentionally killed that person. Therefore, the defendants' motion to strike alternative mental state allegations from the NOIs will be denied.[12]

## X. *Use of accomplice testimony to prove statutory aggravating factors*

In the Omnibus Motion, the defendants move to strike several statutory aggravating factors from the NOIs because they believe that the government will attempt to prove those factors through the use of accomplice testimony. The defendants argue that the factors must be struck because the testimony of cooperating accomplices is insufficiently reliable to meet the "heightened reliability" standards for capital sentencing proceedings. As an initial matter, it is not entirely clear that the government intends to prove any of its aggravating factors through accomplice testimony. Assuming that it does intend to do so, however, this court will be in a better position to rule on the reliability of such testimony after the guilt phase of the trial. The motion to strike will therefore be denied at this time.

## XI. *Statutory Aggravating Factors.*

■ In order to impose the death penalty upon any of the defendants in this case, the government must establish at least one of the aggravating factors listed in 18 U.S.C. § 3592(c). The burden of establishing at least one factor is on the government, and it must persuade the jury unanimously and beyond a reasonable doubt.

---

**12.** Because the defense argues its position on multiple mental state allegations in part by way of analogy with Anti Drug Abuse Act ("ADAA") cases, it should be noted that while the FDPA and ADAA are similar in many ways, they differ in their treatment of mental state. As explained above, the four subsections of 18 U.S.C. § 3591(a)(2) list threshold mental state factors. Four similar (but not identical) mental states appear in 21 U.S.C. § 848(n)(1), but there they appear in a list of "aggravating factors" to be weighed by the jury in determining whether a death sentence is appropriate. The defense cites several § 848 cases holding that the government cannot submit evidence to prove more than one of the four alternate mental states *as aggravating factors under 21 U.S.C. § 848(n)(1). See, e.g., United States v. Tipton,* 90 F.3d 861, 899 (4th Cir.1996) (jury instruction "that permits and results in cumulative findings of more than one of the (n)(1) circumstances as an aggravating factor is constitutional error"); *McCullah,* 76 F.3d at 1111; *United States v. Beckford,* 968 F.Supp. 1080, 1084 (E.D.Va. 1997); *Johnson,* 1997 WL 534163 at *4. But because mental state in the ADAA plays a fundamentally different role—that of an aggravating factor—than it does in the FDPA, the ADAA cases are of limited pertinence.

The government's NOIs have notified the defendants that it plans to try to establish five of the statutory aggravating factors listed in 18 U.S.C. § 3592(c).[13]

The defendants contend that these statutory factors fail to qualify as valid "aggravating factors" in a capital sentencing scheme. The Supreme Court has described the constitutional requirements for such factors as follows:

> Our capital punishment cases under the Eighth Amendment address two different aspects of the capital decisionmaking process: the eligibility decision and the selection decision. To be eligible for the death penalty, the defendant must be convicted of a crime for which the death penalty is a proportionate punishment. *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). To render a defendant eligible for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one "aggravating circumstance" (or its equivalent) at either the guilt or penalty phase. *See, e.g., Lowenfield v. Phelps,* 484 U.S. 231, 244–246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Zant v. Stephens,* 462 U.S. 862, 878, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both). *Lowenfield,* 484 U.S. at 244–46, 108 S.Ct. 546. As we have ex-

plained, the aggravating circumstance must meet two requirements. First, the circumstance may not apply to *every* defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. *See Arave v. Creech,* 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993) ("If the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm"). Second, the aggravating circumstance may not be unconstitutionally vague. *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *see Arave,* 507 U.S. at 471, 113 S.Ct. 1534.

*Tuilaepa,* 512 U.S. at 971–72, 114 S.Ct. 2630 (citations altered).

Before turning to the merits of the individual statutory aggravating factors, the court considers two arguments that are raised repeatedly in the Omnibus Motion. Several of the statutory and non-statutory aggravating factors in this case mirror elements of the crimes of which the defendants are charged.[14] Therefore, during the sentencing phase, it is possible that the jury will be asked to determine whether certain aggravating factors are present, having already determined, during the guilt phase, that the facts necessary to establish those aggravating factors are present. The government's burden is the

---

**13.** As indicated in footnote 2, *supra,* the government does not allege all five of these statutory aggravating factors for each count against each defendant.

**14.** For example, the government plans to establish the statutory aggravating factor codified at 18 U.S.C. § 3592(c)(7) for purposes of count 25 against Rodriguez:

> (7) **Procurement of offense by payment.—** The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

At the same time, count 25 itself alleges that Rodriguez

> [D]id cause another to travel in interstate commerce . . . with the intent that a murder be committed in violation of the laws of Pennsylvania . . . as consideration for the receipt of something of pecuniary value and as consideration for a promise and agreement to pay something of pecuniary value, resulting in the deaths of Jorge Martinez and Luis Garcia on July 12, 1988.

same during both phases—it must prove both the elements of offenses and the aggravating factors beyond a reasonable doubt. The defendants argue that aggravating factors in death sentencing proceedings cannot rely upon proof of the same facts underlying the guilty verdict, because factors that duplicate elements of the underlying crime fail to genuinely narrow the class of death-eligible defendants, as required by the Constitution.

The case law on this issue is not uniform. It appears clear, however, that the proper starting point for analysis is *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). *Lowenfield* considered a Louisiana capital case in which the jury had found the defendant guilty of three counts of first degree murder—of which an essential element was a finding that the defendant "intended to kill or inflict great bodily harm upon more than one person." *Id.* at 233, 108 S.Ct. 546 (quoting La.Rev.Stat. Ann. § 14:30A(3) (1986)). After a sentencing hearing, the jury imposed the death penalty despite the fact that the sole aggravating factor found by the jury was identical to the intent element of the crime. The Supreme Court held that Louisiana's capital sentencing scheme did not offend the Constitution by using "specific inten[t] to kill or to inflict great bodily harm upon more than one person" both as an element of a capital offense and as an aggravating factor of the offense. *See id.* at 246, 108 S.Ct. 546. It reasoned that the constitutionally-mandated narrowing function of a sentencing scheme can be accomplished either at the guilt phase or at the sentencing phase; because Louisiana had satisfied the requirement by narrowly defining the class of death-eligible crimes (at the guilt stage), repeating an element of that definition as an aggravating factor did not offend the Constitution. *See id.* *Lowenfield* therefore makes it possible to conclude that the

government can employ statutory aggravating factors that duplicate elements of the crimes for which the defendants are charged.

Relying on *Lowenfield*, the Third Circuit has upheld Delaware's provision for capital punishment of felony murder, despite the fact that the state allows the jury to count the underlying felony both as an element of the crime at the guilt phase and as an aggravating factor during the sentencing phase. *See Deputy v. Taylor*, 19 F.3d 1485, 1500–02 (3d Cir.1994), *cert. denied*, 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994). The panel stated that, based on *Lowenfield*, "federal courts of appeals have consistently held that a sentencing jury can consider an element of the capital offense as an aggravating circumstance even if it is duplicitous." *Id.* at 1502. Although *Taylor* involved review of a state sentencing scheme, the majority of cases evaluating federal law have agreed, holding that, under the ADAA and FDPA, it is permissible to use as statutory aggravating factors elements of the crime of which the defendant was convicted. *See McCullah*, 76 F.3d at 1109 ("While the [aggravating] factors in [21 U.S.C. § 848(n)(1)] may mirror the intent element found at the guilt phase, this is permissible under *Lowenfield*."); *Frank*, 8 F.Supp.2d at 277 ("[T]he jury may take into account as an aggravating factor at sentencing the circumstances of the crime—even if that information of necessity duplicates elements of the underlying offense—so long as the factor is not duplicative of another factor."). In closely analogous rulings, other courts have held that, under *Lowenfield*, it is permissible to employ aggravating factors that incorporate other offenses of which the defendant has been found guilty in the same criminal proceeding. *See United States v. Hall*, 152 F.3d 381, 416–17 (5th Cir.1998) (following *Lowenfield* for purposes of aggravating factor described in § 3592(c)(1)) *overruled on other*

grounds, *United States v. Martinez–Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000); *Edelin*, 134 F.Supp.2d at 77–78 (citing *Taylor* and holding that "the use of crimes charged in the indictment as aggravating factors at sentencing is permissible"); *Bin Laden*, 126 F.Supp.2d at 301 (following *Lowenfield* for purposes of aggravating factor described in § 3592(c)(1)); *Cooper*, 91 F.Supp.2d at 109 (following *Frank* ).

However, two district court opinions subscribe to a more limited reading of *Lowenfield*. One is *United States v. Kaczynski*, 1997 WL 716487. The court in that case refused to allow the government to argue before the jury that the felony murder statutory aggravating factor listed in 18 U.S.C. § 3592(c)(1)[15] was satisfied based on crimes for which the defendant was indicted and for which the jury had already returned a guilty verdict. The court instead dismissed the § 3592(c)(1) aggravating factor from the government's NOI because it impermissibly duplicated the charged offense, distinguishing *Lowenfield* in the following manner:

> *Lowenfield* held that consideration of an aggravating factor that duplicates the charged crime or an element thereof is not improper if the requisite narrowing has already been accomplished. In *Lowenfield*, the substantive crime itself

had sufficiently narrowed the class of individuals eligible for the death penalty. *Id*. For that reason, the Supreme Court held that it was not impermissible for a statutory aggravating factor to duplicate an element of the charged offense.

> The federal death penalty statute, in contrast to the [Louisiana] statute involved in *Lowenfield*, does not narrow those eligible for the death penalty by narrowly defining the substantive crimes. Instead, it narrows the class of those eligible through the mental state findings and the statutory aggravating factors. Unlike in *Lowenfield*, where the aggravating circumstances did not play a part in the constitutionally required narrowing process, the statutory aggravating factors here do perform a narrowing function. If this function is to be accomplished, the simple repetition of the crime of which a defendant has already been convicted cannot properly be used as an aggravating factor. Since the statute requires the jury to find only one statutory aggravating factor, the narrowing function of these aggravating factors would be completely undermined if the mere commission of the charged offense could suffice.

*Id*. at \*23 (citations omitted).

 In stating that the FDPA "does not narrow those eligible for the death

---

**15. Death during commission of another crime.**—The death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of, an offense under section 32 (destruction of aircraft or aircraft facilities), section 33 (destruction of motor vehicles or motor vehicle facilities), section 36 (violence at international airports), section 351 (violence against Members of Congress, Cabinet officers, or Supreme Court Justices), an offense under section 751 (prisoners in custody of institution or officer), section 794 (gathering or delivering defense information to aid foreign government), section 844(d) (transportation of explosives in interstate commerce for certain purposes), section 844(f) (destruction of Government property by explosives), section 1118 (prisoners serving life term), section 1201 (kidnaping), section 844(i) (destruction of property affecting interstate commerce by explosives), section 1116 (killing or attempted killing of diplomats), section 1203 (hostage taking), section 1992 (wrecking trains), section 2280 (maritime violence), section 2281 (maritime platform violence), section 2332 (terrorist acts abroad against United States nationals), section 2332a (use of weapons of mass destruction), or section 2381 (treason) of this title, or section 46502 of title 49, United States Code (aircraft piracy).

penalty by narrowly defining the substantive crimes" but rather "through the [§ 3591(a)(2) ] mental state findings and the [§ 3592(c) ] statutory aggravating factors," *Kaczynski* apparently takes as its predicate the proposition that the class of death-eligible defendants that must be narrowed in order to satisfy the Eighth Amendment is the class of *all defendants who have committed the same offense as the defendant before the court.* If this be the correct predicate, then it would appear to follow that the government could not repeat elements of the defendant's crime as aggravating factors during FDPA sentencing. However, the bulk of the case law stemming from *Lowenfield* suggests that the class that must be narrowed is actually somewhat broader than the one urged by the defendants in this case. In summarizing the requirements for a capital sentencing decision in *Tuilaepa v. California,* 512 U.S. at 971–72, 114 S.Ct. 2630, the Supreme Court stated that an aggravating circumstance "may not apply to every defendant convicted of murder; it must apply only to a subclass of defendants convicted of murder." For that proposition, *Tuilaepa* cited *Arave v. Creech,* 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993), in which the Court evaluated the constitutionality of using as an aggravating factor the fact that the defendant was a "cold-blooded, pitiless slayer." *Id.* at 468, 113 S.Ct. 1534. It did so by examining whether, under Idaho law, that characterization could reasonably apply to *all Idaho capital defendants. See id.* at 475–76, 113 S.Ct. 1534 ("Given the statutory scheme .. we believe that a sentencing judge reasonably could find that not all Idaho capital defendants are 'cold-blooded.' "). Therefore, *Tuilaepa* and *Creech,* taken together, teach that the class of defendants which must be narrowed through the use of aggravating factors is not the class of defendants in the prosecuting jurisdiction who are convicted of the same capital crime as the defendant, but rather the class of all defendants in the prosecuting jurisdiction convicted of any capital crime. *Kaczynski* thus errs in erecting a per se rule against the use of elements of the charged capital offense or other charged offenses as aggravating factors; such use only offends the Constitution if those elements or offenses are necessarily present in *every* crime for which capital punishment is authorized.

One case other than *Kaczynski* suggests that there are constitutional problems with allowing elements of the underlying criminal offense to become aggravating factors in a capital sentencing decision. In *United States v. McVeigh,* 944 F.Supp. at 1479–80, a district court reached a decision similar to the one in *Kaczynski,* but for different reasons. Like *Kaczynski,* the court held that the statutory aggravating factor listed in 18 U.S.C. § 3592(c)(1) could not be satisfied by crimes for which the jury had already returned a guilty verdict. In a brief analysis, the court stated that "[t]o allow the jury to weigh as an aggravating factor a crime already proved in a guilty verdict would unfairly skew the weighing process in favor of death." *Id.* at 1489–90. Whatever the logical merit of such words, they seem to contradict the holding of *Lowenfield*—and to echo instead Justice Marshall's dissent in that case. *See id.* at 254–58, 108 S.Ct. 546 (Marshall, J., dissenting) ("complete overlap between aggravating circumstances ... and elements of the offense ... will inevitably tilt the sentencing scales toward the imposition of the death penalty").

Accordingly, if there is a sentencing phase in the present case, the government would not be barred from pleading and proving as aggravating factors elements of criminal offenses which have been proved beyond a reasonable doubt during the guilt

phase. Next to be considered are the defendants' arguments with respect to each of the government's proposed statutory aggravating factors.

*"Pecuniary gain" and "Procurement of offense by payment"*

The first two statutory aggravating factors listed by the government in its NOIs come from 18 U.S.C. §§ 3592(c)(7) and (8):

(7) **Procurement of offense by payment.**—The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

(8) **Pecuniary gain.**—The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.

In the Sixth Superseding Indictment, the government alleges that defendant Rodriguez procured various murders by payment, and that Llera Plaza and Martinez Acosta committed various murders for pecuniary gain. The defendants thus contend that the §§ 3592(c)(7) and (8) factors improperly duplicate elements of the crimes with which they are charged. As described above, this line of argument is unavailing. *See Cooper,* 91 F.Supp.2d at 105 ("As long as there are defendants convicted of capital offenses who were not motivated by pecuniary gain when they committed a capital murder offense, the use of the pecuniary gain factor narrows the class of individuals eligible to receive the death penalty for that factor."). The defendants' motion to strike these factors from the NOIs will therefore be denied.

*"Substantial planning and premeditation"*

■ In an argument similar to the one just considered, the defendants move to strike the statutory aggravating factor contained in 18 U.S.C. § 3592(c)(9):

16. "The defendant committed the offense af-

(9) **Substantial planning and premeditation.**—The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism.

The defendants contend that planning and premeditation are part of every intentional murder and that this factor therefore fails to narrow the class of defendants eligible for the death penalty. Federal courts, however, have routinely upheld the use of § 3592(c)(9) as an aggravating factor in capital cases; the word "substantial" has been held to have a "commonsense meaning" (to a properly instructed jury) that sufficiently narrows the pool of defendants eligible for the death penalty. *See Minerd,* 176 F.Supp.2d at 438 (finding § 3592(c)(9) "not unconstitutionally vague"); *Glover,* 43 F.Supp.2d at 1225 ("precise instructions to the jury should resolve ... vagueness concerns"); *Frank,* 8 F.Supp.2d at 278; *McVeigh,* 944 F.Supp. at 1490. In a number of other cases, courts have upheld the use in the ADAA of the aggravating factor in 21 U.S.C. § 848(n)(8),[16] which is essentially identical to 18 U.S.C. § 3592(c)(9). *See Tipton,* 90 F.3d at 895–96; *McCullah,* 76 F.3d at 1110–11; *United States v. Spivey,* 958 F.Supp. 1523, 1531 (D.N.M.1997); *United States v. Walker,* 910 F.Supp. 837, 849 (N.D.N.Y.1995); *United States v. Cooper,* 754 F.Supp. 617, 623 (N.D.Ill.1990). As a result, the defendants' motion to strike § 3592(c)(9) as unconstitutional will be denied. The defendants' motion to strike the factor for lack of evidence will be deferred until the end of the guilt phase.

*"Grave risk of death to additional persons"*

■ The court also denies the defendants' motion to strike from the NOIs the aggravating factor in § 3592(c)(5):

ter substantial planning and premeditation."

(5) **Grave risk of death to additional persons.**—The defendant, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense.

The defendants' first argument against this factor is that it appears to duplicate the threshold mental state factor in 18 U.S.C. § 3591(a)(2)(D), which applies when a defendant

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act . . . .

Noting some similarity between § 3591(a)(2)(D) and § 3592(c)(5), the defendants contend that the NOIs impermissibly double count aggravating evidence. For this proposition, defendants cite *United States v. McCullah*, 76 F.3d 1087, 1111 (10th Cir.1996), but that case does not support their argument. *McCullah* held that the submission to an ADAA jury of the aggravating factors contained in 21 U.S.C. § 848(n)(1)(C) and (D)[17] was impermissible because the mental states described in those factors necessarily overlapped.[18] The defendants here argue that

18 U.S.C. § 3592(c)(5) similarly overlaps with 18 U.S.C. § 3591(a)(2)(D). But, as described in Part V of this opinion, above, the FDPA uses the mental state described in § 3591(a)(2)(D) as a threshold factor, not as an aggravating factor, and the government evidently does not plan to use it as anything else. Accordingly, the defendants' argument based on *McCullah* is unavailing.

The defendants' remaining argument is based on the assumption that the government will try to prove that, in killing Jorge Martinez, the defendants put Luis Garcia (an unintended victim) at grave risk of death. It appears, however, that the government has in mind a third occupant of the car who was put at risk but survived. *See* Part II of this opinion, *supra.* The defendants' motion to strike § 3592(c)(5) as an aggravating factor will therefore be denied.

*"Multiple killings"*

The last statutory aggravating factor the government alleges is the one contained in § 3592(c)(16), which states:

(16) **Multiple killings or attempted killings.**—The defendant intentionally killed or attempted to kill more than one person in a single criminal episode.

Defendants Llera Plaza and Martinez Acosta[19] raise two objections to the use of this aggravating factor. First, they repeat

---

**17.** The four subsections of 21 U.S.C. § 848(n)(1) apply where a defendant

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury which resulted in the death of the victim;

(C) intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim;

(D) intentionally engaged in conduct which—

(i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and

(ii) resulted in the death of the victim.

**18.** In *Jones v. United States*, the Supreme Court considered the *McCullah*'s double-counting theory, but did not endorse that theory. *See* 527 U.S. 373, 398, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Parts XI and XII of this opinion discuss this issue further.

**19.** The government's NOI for Rodriguez does not list § 3592(c)(16) as an aggravating factor.

the argument—rejected above—that the government cannot use an aggravating factor which duplicates elements of the charged offense. Defendant Llera Plaza adds a second argument: he contends that he is not charged in the indictment with having "intentionally killed" more than one person. This is a matter that should properly be deferred until after the guilt phase; doing so will allow the court to become fully acquainted with the evidence against Llera Plaza, and there is no reason to think that his ability to prepare for the sentencing phase will be compromised by the delay.

## XII. *Non-statutory aggravating factors*

As noted above, the FDPA requires that the jury find at least one statutory aggravating factor beyond a reasonable doubt in order to return a death sentence. In determining whether the death penalty is appropriate, however, the jury is to weigh any mitigating factors proved by the defense against the statutory aggravating factor or factors of which notice has been given together with any non-statutory aggravating factors of which notice has been given. In this case, the government has given notice of five non-statutory factors, each of which has been challenged by the defendants. Each challenge will be considered in turn.

### *Future dangerousness of the defendant*

██ In moving to strike "Future dangerousness of the defendant" as a non-statutory aggravating factor, the defendants concede that the Supreme Court and lower courts have regularly upheld its use in other death penalty cases. *See Bin Laden,* 126 F.Supp.2d at 304 (collecting cases and stating that "lower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the FDPA"). Defendants argue in the alternative that the jury should receive limiting instructions on pre-

cisely what sort of "dangerousness" the jury should consider. That argument has merit.

In *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the Supreme Court held that a capital defendant's due process rights were violated when a state judge refused to instruct the jury that the defendant would not be paroled if the jury were to sentence him to life imprisonment. The Supreme Court stated that although "future dangerousness" is a valid factor for the jury's consideration, and the prosecutor had not erred in arguing that the defendant posed such a danger, *id.* at 162, 114 S.Ct. 2187, the actual duration of the defendant's sentence becomes a factor "indisputably relevant" to the sentencing decision when future danger is considered. In Justice Blackmun's words:

> Because truthful information of parole ineligibility allows the defendant to "deny or explain" the showing of future dangerousness, due process plainly requires that he be allowed to bring it to the jury's attention by way of argument by defense counsel or an instruction from the court.

*Id.* at 169; *see also Shafer v. South Carolina,* 532 U.S. 36, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001) (reaffirming *Simmons* ). Lower courts have taken the Supreme Court's discussion in *Simmons* to mean that, in the FDPA context, government arguments regarding "future dangerousness" should be limited to the dangers posed by the defendants while serving a life sentence in prison. *See Gilbert,* 120 F.Supp.2d at 154; *Cooper,* 91 F.Supp.2d at 111; *United States v. Peoples,* 74 F.Supp.2d 930, 931 (W.D.Mo.1999). This court reads *Simmons* in the same way. Accordingly, if there is a sentencing phase, the jury will be instructed that it is to

evaluate the defendants' "future danger-ousness" in the context of life imprison-ment, and the government will be request-ed to limit its sentencing phase evidence to that which is relevant to a context of life imprisonment.

*Contemporaneous conviction for another killing*

■ The next non-statutory aggrava-ting factor challenged by the defendants is that of "Contemporaneous conviction for another killing." The defendants attack this factor on several grounds. First, they apply the argument—rejected above—that offenses for which the defendants are con-victed during the guilt phase cannot be used as aggravating factors for another crime during the sentencing phase. Sec-ond, they contend that even if a defendant is convicted of a crime during the guilt phase, that does not constitute a "convic-tion" for purposes of the FDPA sentencing phase. For this proposition, they cite *United States v. Pitera,* 795 F.Supp. 571 (E.D.N.Y.1992). *Pitera* involved an ADAA statutory aggravating factor that applies when

> The defendant has been convicted of another Federal offense, or a State of-fense resulting in the death of a person, for which a sentence of life imprison-ment or a sentence of death was autho-rized by the statute.

21 U.S.C. § 848(n)(2). The district court's opinion examined the meaning of the phrase "has been convicted" and conclud-ed, based in part on the rule of lenity, that it meant that the defendant had been sub-ject to "a *judgment* of conviction and not simply a plea or verdict of guilty." *Id.* at 577 (emphasis added); *see also id.* at 573 (examining whether "Congress intended

persons who have been 'convicted' of homi-cides under § 848(n)(2) to include individu-als found guilty of such crimes but not yet subject to a formal judgment of convic-tion"). However, the *Pitera* court careful-ly confined its holding by pointing out that the government remained "free to proffer evidence of ... additional homicides as *non-statutory* aggravating factors." *Id.* (emphasis in original). Therefore, instead of supporting the defendants' attack on the use of "contemporaneous conviction for other killings" as a non-statutory aggrava-ting factor, *Pitera* undermines it.

The defendants' third argument against the "contemporaneous conviction for an-other killing" factor fails as well. Defen-dants contend that this factor is essentially the same as the "multiple killings" factor, and that it therefore violates the rule against duplicative aggravating factors.[20] As described earlier, the leading case es-pousing that rule is *United States v. McCullah,* 76 F.3d 1087, *reh'g denied* 87 F.3d 1136 (10th Cir.1996), which held that the simultaneous submission to a jury of the aggravating factors contained in 21 U.S.C. § 848(n)(1)(C) and (D) was imper-missible because those factors necessarily overlapped.

Although *McCullah* has been endorsed by numerous other courts, *see, e.g., United States v. Allen,* 247 F.3d 741, 789–90 (8th Cir.2001) (noting "strong support" for the argument that "aggravating factors that duplicate each other can impermissibly skew a jury in favor of imposing a death sentence"); *Bin Laden,* 126 F.Supp.2d at 299 ("an aggravating factor that is neces-sarily and wholly subsumed by a different aggravator ... is invalid per se"); *Glover,* 43 F.Supp.2d at 1221–22 (requiring gov-ernment to choose between overlapping

---

**20.** This argument is not raised by Rodriguez, since his NOI does not list "multiple killings" as an aggravating factor.

aggravating factors), the Supreme Court has given it only limited support. As noted in footnote 18, above, in *Jones v. United States,* 527 U.S. at 373, 119 S.Ct. 2090, four Justices adopted *McCullah*'s double-counting theory only for purposes of argument, stating that "[w]e have never before held that aggravating factors could be duplicative so as to render them constitutionally invalid ... [w]hat we have said is that the weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor." 527 U.S. at 398, 119 S.Ct. 2090 (citing *Stringer,* 503 U.S. at 232, 112 S.Ct. 1130). In dissent, Justice Ginsburg, joined by two other Justices, endorsed *McCullah* more whole-heartedly, while Justices Scalia and Breyer chose not to join the portions of either opinion that spoke to the issue.

Although the court does not read the tea leaves in *Jones* to reject the *McCullah* rule, the NOIs in this case do not run afoul of that rule. The statutory aggravating factor for multiple killings states:

> **Multiple killings or attempted killings.**—The defendant intentionally killed or attempted to kill more than one person *in a single criminal episode.*

18 U.S.C. § 3592(c)(16) (emphasis added). The NOIs for Llera Plaza and Martinez Acosta indicate that the government uses this statutory aggravating factor in reference to the killings, in a "single criminal episode," of Jorge Martinez and Luis Garcia. In contrast, for each capital count in which the government uses the non-statutory aggravating factor of "contemporaneous conviction for another killing," the phrase "another killing" appears to refer

to a killing that took place in a *different* criminal episode.[21] When the government uses both the "multiple killing" and "contemporaneous conviction for another killing" aggravating factors in a single capital count, it thus appears to rely on different factual predicates for each factor. Therefore, the *McCullah* rule does not appear to be infringed. The defendants' motion to strike the "contemporaneous conviction for another killing" non-statutory aggravating factor will accordingly be denied.

*Contemporaneous conviction for a serious drug offense*

■ For all of the capital counts against defendants Llera Plaza and Rodriguez, the government lists the following as a non-statutory aggravating factor:

> **Contemporaneous Conviction for a Serious Drug Offense.** The defendant, as part of this case, is subject to a contemporaneous conviction for violating Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of 5 or more years may be imposed, as charged in Count One of the Sixth Superseding Indictment.

Llera Plaza and Rodriguez point out that this *non-statutory* factor bears a marked similarity to a *statutory* factor that appears at 18 U.S.C. § 3592(c)(12) but that has not been listed in their NOIs. That factor reads:

> **Conviction for serious Federal drug offenses.**—The defendant had previously been convicted of violating title II or III of the Comprehensive Drug Abuse

---

**21.** For example, all of the counts for which the government seeks the death penalty against Martinez Acosta arise from the killings of Martinez and Garcia. When used in this context, the "multiple killings" aggravating factor in Martinez Acosta's NOI refers to those two killings, which took place "in a single criminal episode." 18 U.S.C. § 3592(c)(16). When the NOI for Martinez Acosta lists the aggravating factor of "Contemporaneous conviction for another killing," however, it refers to his alleged involvement in the murder of Ricky Guevara–Velez, for which he is charged in count 23.

Prevention and Control Act of 1970 for which a sentence of 5 or more years may be imposed or had previously been convicted of engaging in a continuing criminal enterprise.

Llera Plaza and Rodriguez therefore argue that the use of the "contemporaneous conviction" factor by the government is an end run around the requirements of the "previous conviction" statutory factor. But even if this is true, Llera Plaza and Rodriguez fail to explain any legal ground that prohibits the government from using this approach. As explained above, *Pitera* (the only case relevant case cited by the defendants) affirmatively supports the idea that the government can deploy as non-statutory aggravating factors charges akin to, but not duplicative of, statutory aggravating factors.

Moreover, there is at least one crucial difference between statutory aggravating factors and non-statutory aggravating factors. The jury *must* conclude that at least one statutory aggravating factor exists beyond a reasonable doubt in order to return a sentence of death—a non-statutory aggravating factor cannot be substituted. Therefore, the government's modification of § 3592(c)(12) for use as a non-statutory aggravating factor does not eviscerate the structure of the FDPA, as the defendants suggest. The motion by Llera Plaza and Rodriguez to strike from the NOIs the non-statutory aggravating factor of "Contemporaneous conviction for a serious drug offense" will accordingly be denied.

*Victim impact*

The defendants challenge the listing by the government of "victim impact" in the NOIs for each count against each defendant in this case. Each NOI states the following:

**Victim Impact.** The defendant's murders of [victim[s]] have caused injury, harm, and loss to the victim[s], and to the victim[s]' families because of the victim[s]' personal characteristics and potential as individual human beings and the consequent impact of the deaths upon the victim[s]' families.

The defendants argue that this factor is vague, that it fails to adequately narrow the class of murders subject to the death penalty, that its probative value fails to outweigh the danger of prejudice, and that it violates the Fifth and Eighth Amendments. The government contends that all of these arguments are foreclosed by Justice Thomas's opinion for the Court in *Jones v. United States.* However, only three other Justices—the Chief Justice, and Justices O'Connor and Kennedy—joined Justice Thomas in the portion of that opinion upon which the government relies.[22]

Because of the posture of *Jones,* the most authoritative Supreme Court case on the issue of victim impact evidence remains *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). In *Payne,* the Court held that "the Eighth Amendment erects no *per se* bar" against admission of victim impact evidence. *Id.* at 827, 111 S.Ct. 2597 (overruling *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *South Carolina v. Gathers,* 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989)). Based on *Payne,* federal courts have routinely allowed the use of victim impact evidence in FDPA proceedings. *See, e.g., Allen,* 247 F.3d at 778; *Glover,* 43 F.Supp.2d at 1235; *Frank,* 8 F.Supp.2d at 280; *Davis,* 912 F.Supp. at 947.

22. In part III of his opinion, Justice Thomas considered Jones' argument that the nonstatutory aggravating factors applied in his case were "vague, overbroad and duplicative." 527 U.S. at 395, 119 S.Ct. 2090. As an initial point, Justice Thomas stated that "[t]he Eighth Amendment ... permits capital sentencing juries to consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family in deciding whether an eligible defendant should receive a death sentence." *Id.* (citing *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)). He then went on to hold that, in *Jones,* the victim impact factors used by the government were not vague. *Id.* at 400, 119 S.Ct. 2090.

▮ The defendants also contend that the specific phrasing used by the government to describe "victim impact" in this case is impermissibly vague. In particular, they allege that the phrases "injury, harm, and loss" and "personal characteristics" lack any objective meaning. An aggravating factor is not vague if it has a "common-sense core of meaning ... that criminal juries should be capable of understanding." *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (quoting *Jurek v. State,* 428 U.S. 262, 269, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment)). As described earlier, the Supreme Court has invalidated only a few aggravating factors on vagueness grounds, and those factors all involved language significantly more subjective than the language at issue here. *See Tuilaepa,* 512 U.S. at 974, 114 S.Ct. 2630 (noting invalidation in *Maynard,* 486 U.S. at 363, 108 S.Ct. 1853, of factor describing murder as "especially heinous, atrocious, or cruel," and in *Godfrey,* 446 U.S. at 427–429, 100 S.Ct. 1759, of factor describing murder as "outrageously or wantonly vile, horrible and inhuman"). Moreover, the Court has pointed out that concerns regarding vagueness of an aggravating factor "are mitigated when a factor does not require a yes or a no answer to a specific question, but instead only points the sentencer to a subject matter." *Tuilaepa,* 512 U.S. at 975, 114 S.Ct. 2630. For these reasons, this court finds that, in the context of a sentencing phase proceeding evaluating "victim impact," the terms, "injury, harm, and loss" and "personal characteristics" have a "common-sense core of meaning" sufficient to obviate vagueness concerns.[23] For this reason, along with the others stated above, the defendants' request to strike victim

impact from the NOIs as a non-statutory aggravating factor will be denied.

*Defendant's participation in another killing, not charged in this case*

▮ Finally, defendant Martinez Acosta challenges the proposed non-statutory aggravating factor charging his "participation in another killing, not charged in this case." The NOI recites that:

**Defendant's Participation in Another Killing, not Charged in This Case.** The defendant participated in the killing of Carlos Maysonet Adorno in Rio Piedras, Puerto Rico, on September 12, 1997.

Martinez Acosta moves to strike this aggravating factor because its proof would involve the introduction of evidence of an unadjudicated crime. Because federal courts have upheld the use of such evidence in capital cases, this motion will be denied. *See Gilbert,* 120 F.Supp.2d at 151 ("the overwhelming majority of courts has held that neither the Eighth Amendment nor the due process clause impose a *per se* barrier to the use of unadjudicated criminal conduct in capital sentencing"); *see also Hall,* 152 F.3d at 404; *Beckford,* 964 F.Supp. at 1000; *Davis,* 912 F.Supp. at 949. Nevertheless, as one court put it, "a recognition that evidence of uncharged criminal conduct *may* be offered does not mean that *any* criminal act may be considered by the jury as an aggravating factor." *Gilbert,* 120 F.Supp.2d at 152. The evidence must be reliable and relevant. *See id.* at 152–53. This court will be in a better position to evaluate the reliability and relevance of the government's evidence after the government submits the evidentiary outline described in Part II of this opinion, above, and in the order which accompanies this opinion.

---

**23.** Defendants' citation to *Bin Laden,* 126 F.Supp.2d at 304, is inapposite. In that case, the court stated: "An oblique reference to 'injury, harm, and loss,' without more, does nothing to guide Defendants' vital task of preparing for the penalty phase of trial." *Id.* This statement concerns the issue of whether an NOI stating that the government will prove that victims suffered "injury, harm, and loss" adequately notifies a defendant of what evidence the defendant will be called upon to refute during the sentencing phase of a capital trial. That issue is different from the question, posed here, of whether the phrase "injury, harm, and loss" lacks the "common-sense core of meaning ... that criminal juries should be capable of understanding" to which the *Tuilaepa* Court referred. 512 U.S. at 973, 114 S.Ct. 2630.

## ORDER

For the reasons set out in the accompanying opinion, it is hereby ORDERED that:

1. Defendants' Motion for Pretrial Ruling on Sufficiency and/or Reliability of Information Supporting Aggravating Factors Contained in the Notice to Seek the Death Penalty is DENIED.

2. Defendants' Motion to Strike and/or Dismiss the Notices and Amended Notices of Intent to Seek the Death Penalty is DENIED, except as follows: The government is ordered to provide to the court and the defendants, by February 15, 2002, an outline summarizing (and, to the extent necessary, explaining the pertinence of) the information it intends to introduce to establish the aggravating factors listed in the Amended Notices of Intent to Seek the Death Penalty. That outline shall contain, at a minimum:

 a) An outline, for counts 24, 25, 26, 29, 30, and 33 in the Sixth Superseding Indictment, of the information the government intends to use to establish the statutory aggravating factor of "Grave risk of death to additional persons," 18 U.S.C. § 3592(c)(5), during the commission of the offenses alleged in the Sixth Superseding Indictment, and the manner in which such person or persons were placed at such risk.

 b) An outline, for each defendant, of the information the government intends to use to establish the non-statutory aggravating factor of "Future Dangerousness of the Defendant."

 c) An outline of the information the government intends to use to establish the non-statutory aggravating factor of "Victim Impact."

 d) An outline, for defendant Martinez Acosta, of the information the government intends to use to establish Martinez Acosta's participation in another killing, not charged in this case.